# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT TACOMA

CAMERON LUNDQUIST, an individual, on behalf of himself and all others similarly situated,

Plaintiff,

v.

FIRST NATIONAL INSURANCE COMPANY OF AMERICA, a New Hampshire Corporation,

Defendant.

CASE NO. 18-5301 RJB

ORDER ON MOTION TO DISMISS PLAINTIFF'S COMPLAINT

**THIS ORDER VACATED BY MINUTE ORDER (DKT. 29)**

This matter comes before the Court on the Defendant First National Insurance Company of America's ("First National") Motion to Dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12 (b)(6). Dkt. 25. Oral argument has been requested, but is unnecessary to decide the motion. The Court has considered the pleadings filed in support of and in opposition to the motion and the file herein.

In this putative class action, the Plaintiff asserts that First National's practice of using unexplained and unjustified condition adjustments to comparable vehicles when valuing a total

| | |
|---|---|
| 1 | loss claim for a vehicle, violates the Washington Administrative Code ("WAC"), and so |
| 2 | constitutes: (1) breach of contract, (2) breach of the implied covenant of good faith and fair |
| 3 | dealing, and (3) violation of Washington's Consumer Protection Act, RCW 19.86., *et seq*. |
| 4 | ("CPA"). Dkt. 1. First National now moves for dismissal of the complaint for failure to state a |
| 5 | claim under Fed. R. Civ. P. 12 (b)(6). Dkt. 25. For the reasons provided below, the motion (Dkt. |
| 6 | 25) should be denied. |

## I.     FACTS AND PROCEDURAL HISTORY

When ruling on a Rule 12 (b)(6) motion to dismiss, "courts must consider the complaint in its entirety, as well as other sources, . . . in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Accordingly, the following facts are taken from the Complaint, or from documents referenced therein, the authenticity of which is not in dispute.

In 2017, Plaintiff Cameron Lundquist owned a 1998 Dodge Ram 2500 Quad Cab that was in an accident that was so severe that the truck was considered a total loss. Dkt. 1, at 6. At the time, Plaintiff had a vehicle insurance contract with First National, which provided that First National's limit of liability for a total loss was lowest of either the "actual cash value" or the amount necessary to repair or replace the vehicle. Dkt. 25-4, at 22. (Parties do not dispute that the "actual cash value" was the lower than the cost of repair or replacement.) The insurance contract further provided that "[a]n adjustment for depreciation and physical condition may be made based upon the physical condition and wear and tear of the property . . . at the time of the loss." Dkt. 25-4, at 22.

According to the Complaint, "[t]o calculate its offer and payment" on a total loss, First National obtains a Market Valuation Report ("report") "from a third-party company called CCC

Information Services, Inc. ("CCC")." Dkt. 1, at 5. The Complaint alleges that "First National instructs CCC as to what specific data to include in the report as the basis for the valuation, including whether to include condition adjustments to comparable vehicles." *Id.,* at 6. "These reports purport to contain values for comparable used vehicles recently sold or for sale in the geographic area of the insured." *Id.*, at 5. The report also calculates a "purported valuation for the loss vehicle." *Id.,* at 5-6. The Complaint asserts that while the reports reduce the estimated value of the comparable vehicles for "condition adjustments," the reports fail to "itemize or explain" the basis for these adjustments. *Id.,* at 6. Further, the Complaint alleges that "even though each comparable vehicle has unique characteristics, the reports reduce the value of multiple comparable vehicles by the same amount . . . without any itemization or explanation for the amount," thereby artificially reducing the valuation of the loss vehicle. *Id.,* at 6.

After Plaintiff made a claim for the total loss of his truck, First National obtained a report from CCC, and based an offer of settlement of $18,406.12 on the valuation report. Dkt. 1, at 6. Plaintiff accepted the offer. *Id.*

The "Comparable Vehicles" portion of the report lists three comparable trucks: 1998 Dodge Ram 2500 Quad Cab with 127,664 miles, a 1999 Dodge Ram 2500 Quad Cab with 130,017 miles, and a 1999 Dodge Ram 3500 Quad Cab with 201,150 miles; each listed for sale with car dealers. Dkt. 25-2, at 9-10. This section of the report contains a line "Condition," that reduces the value of all three comparable vehicles by $936. Dkt. 25-2, at 9-10. This line includes a footnote that provides: "[t]he Condition Adjustment sets that comparable vehicle to Normal Wear condition which the loss vehicle is also compared to in the Vehicle Condition Section." Dkt. 25-2, at 10. The "Vehicle Condition" portion of the report lists the following conditions: seats, carpets, dashboard, headliner, sheet metal, trim, paint, glass, engine, transmission, front tires, and rear tires. Dkt. 25-2, at 8. Plaintiff's truck was given an upward

adjustment as being in "dealer ready" condition for the dashboard and engine (in the amount of $51 each, for a total of $102) and was listed as "normal wear" for the other conditions. *Id.* A note on the side of this page states:

> First National Insurance Company of America uses condition inspection guidelines to determine the condition of key components of the loss vehicle prior to the loss. The guidelines describe physical characteristics for these key components, for the condition selected based upon age. Inspection Notes reflect observations from the appraiser regarding the loss vehicle's condition.
>
> CCC makes dollar adjustments that reflect the impact the reported condition has on the value of the loss vehicle as compared to Normal Wear condition. These dollar adjustments are based upon interviews with dealerships across the United States.

*Id.* The Complaint alleges that by reducing the comparable vehicles by $936, without regard to any of the individual characteristics of those comparable vehicles (and without any explanation), First National's settlement offer was arbitrary, unjustified, and resulted in an underpayment to Plaintiff. Dkt. 1, at 6-7. The Complaint maintains that First National is violating provisions of the Washington Administrative Code ("WAC") which regulate the "Methods and Standards of Practice for Settlement of Total Loss Vehicle Claims," WAC 284-30-391. *Id.* Based on alleged violations of the WAC, specifically WAC 284-30-391 (4)(b) and (5)(d), the Complaint makes claims for breach of contract, breach of the duty of good faith and fair dealing, and for violation of the CPA. *Id.* The Complaint seeks damages, declaratory and injunctive relief. *Id.*

In the pending motion to dismiss, First National argues that it complied with all applicable provisions of WAC, particularly WAC 284-30-391 (4)(b) and (5)(d). Dkt. 25. It asserts that Subsection (4)(b) does not impose any disclosure obligation and Subsection (5)(b) does not apply to comparable vehicles. *Id.* It argues that even if subsection (4)(b) did require disclosure and subsection (5)(d) did apply to condition adjustments made to comparable vehicles, First National fully complied with the regulations. *Id.* First National asserts all

Plaintiff's claims rise and fall on its compliance with WAC 284-30-391, and so, the Complaint should be dismissed. *Id.*

Plaintiff opposes the motion, and argues that WAC 284-30-391 prohibits un-itemized and unexplained condition adjustments, whether to the loss vehicle or a comparable vehicle. Dkt. 26. He points out that the valuation of the loss vehicle is found by averaging the actual cash values of the comparable vehicles. *Id.* Accordingly, whether an insurer makes a condition adjustment to the loss vehicle or a comparable vehicle, the adjustment results in an "addition or deduction from the actual cash value" and so must be explained and itemized under Subsection 5 (d). *Id.* Plaintiff asserts that First National did not do so here. *Id.* Plaintiff also argues that Subsection (4)(b) requires that when an insurer relies on comparable vehicles listed for sale, as it has here, the value of those vehicles must be both "itemized and verifiable," and maintains that First National did not do so here. *Id.* Plaintiff asserts that the motion to dismiss should be denied. *Id.*

First National replies and asserts that Plaintiff ignores the plain language of Subsection (4)(b) and ignores the context of Subsection 5(d), and so distorts the meaning of WAC 284-30-391. Dkt. 27. It argues that Plaintiff misses the point of WAC 284-30-392. *Id.* First National maintains that, in any event, it complied with all applicable regulations, and so Plaintiff's Complaint should be dismissed in its entirety. *Id.*

This opinion will first provide the standard for a motion to dismiss, then because Plaintiff's claims turn on whether First National violated WAC 284-30-391, it will address whether such a violation has been plausibly alleged (considering the current record which includes the valuation report and insurance contract). It will then turn to whether Plaintiff states claims for breach of contract, breach of the duty of good faith and fair dealing, violation of the CPA, and lastly, whether his claims for declaratory and injunctive relief should be dismissed.

## II. DISCUSSION

### A. STANDARD FOR MOTION TO DISMISS

Fed. R. Civ. P. 12 (b)(6) motions to dismiss may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Department*, 901 F.2d 696, 699 (9th Cir. 1990). Material allegations are taken as admitted and the complaint is construed in the plaintiff's favor. *Keniston v. Roberts*, 717 F.2d 1295 (9th Cir. 1983). "While a complaint attacked by a Rule 12 (b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-55 (2007) (*internal citations omitted*). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. at 555. The complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Id*. at 547.

### B. VIOLATIONS OF WAC 284-30-391

On the outset, the Court notes that there is no Washington case interpreting the meaning of any of the provisions of WAC 284-30-391. Washington applies canons of statutory interpretation to regulations. *Silverstreak, Inc. v. Washington State Dep't of Labor & Indus.*, 159 Wn.2d 868, 881 (2007). When applying basic statutory construction principles, the primary task is to determine which interpretation best reflects the intent of the regulation and to give effect to that interpretation. *See Id*., at 882. Accordingly, "[a]s in statutory interpretation, where a regulation is clear and unambiguous, words in a regulation are given their plain and ordinary

meaning unless a contrary intent appears." *Id.* Further, "a reviewing court has a duty to give meaning to every word in a regulation." *Id.*, at 884.

The Washington legislature has found that "[t]he business of insurance is one affected by the public interest, requiring that all persons be actuated by good faith, abstain from deception, and practice honesty and equity in all insurance matters." RCW § 48.01.030. To that end, it authorized the Washington Insurance Commissioner to promulgate regulations which define unfair or deceptive methods, acts, and practices in the business of insurance. RCW 48.30.010. One such regulation which is relevant here, WAC 284-30-391 (2) provides, an "insurer may settle a total loss claim by offering a cash settlement based on the actual cash value of a comparable motor vehicle, less any applicable deductible provided for in the policy." WAC 284-30-391 (2). WAC 284-30-320 (3) provides:

> "Comparable motor vehicle" means a vehicle that is the same make and model, of the same or newer model year, similar body style, with similar options and mileage as the loss vehicle and in similar overall condition, as established by current data. To achieve comparability, deductions or additions for options, mileage or condition may be made if they are itemized and appropriate in dollar amount.

Likewise, WAC 284-30-391 (4)(b) provides: "[w]hen settling a total loss claim . . . the insurer must . . . [b]ase all offers on itemized and verifiable dollar amounts for vehicles that are currently available, or were available within ninety days of the date of loss, using appropriate deductions or additions for options, mileage, or condition when determining comparability."

The plain language of subsection (4)(b) contains a disclosure requirement: offers are to be based on "itemized and verifiable dollar amounts." Merriman Webster defines the term "itemized" as "to set down in detail or by particulars; list;" and defines "verifiable" as to be able to "establish the truth, accuracy or reality of." First National points out that itemized means to

create a list - and asserts that it did list of several factors taken into account in establishing the value of the comparable vehicles. First National does not account for the additional requirement – that the dollar amounts must also be "verifiable" or capable of being established as accurate. The term "verifiable" would be rendered meaningless if it was not intended to allow the claimant an opportunity to establish whether the dollar amount was accurate by disclosure of the amount. This interpretation is consistent with the definition of "comparable motor vehicle," which requires that "[t]o achieve comparability, deductions or additions for options, mileage or condition may be made if they are itemized and appropriate in dollar amount." There would be no reason to include that the "deductions or additions" be "appropriate in dollar amount" if insurance companies did not have to disclose this amount.

Plaintiff also asserts that First National violated WAC 284-30-391 (5)(d) because the blanket deduction of $936 on all the comparable vehicles was not explained and itemized with specific dollar amounts. First National argues that read in context, WAC 284-30-391 (5) does not create a disclosure requirement. First National maintains that subsection (5)(d) applies to adjustments made to the actual cash value of the loss vehicle, and not condition adjustments to comparable vehicles. First National's reading is too narrow. WAC 284-30-391 (5) provides that:

Insurers may adjust a total loss settlement through the following methods only:

(a) The insurer may deduct from a first party claim the amount of another claim payment . . . previously made to an insured for prior unrepaired damage to the same vehicle.

(b) Deductions other than those made pursuant to (a) of this subsection may be made for other unrepaired damage as long as the amount of deduction is no greater than the decrease in the actual cash value due to prior damage.

(c) If the claimant retains the total loss vehicle, the insurer may deduct the salvage value from the settlement amount . . .

> (d) Any additions or deductions from the actual cash value must be explained to the claimant and must be itemized showing specific dollar amounts.

Plaintiff accurately points out that if the "additions or deductions" only applied to the loss vehicle, as First National maintains, it would amount to an "end-run around" the explanation and itemization requirements of subsection (5)(d). He points out that the value of the loss vehicle is obtained from averaging the value of the comparable vehicles; by making unexplained deductions to the value of the comparable vehicles, the value of the loss vehicle is reduced with no explanation or itemization, rendering subsection (5)(d) meaningless. Although First National argues that in context subsection (5) only applies to the value of the loss vehicle – reductions for the value of unrepair and paid for damage or salvage value, subsection (5)(d) does not expressly provide that it applies to only the loss vehicle. Other of the subsections in this regulation specifically address either the loss vehicle or comparable vehicles. The regulation's failure to so specify should be interpreted as to include both the loss vehicle and comparable vehicles. Nothing in WAC 284-30-392 (which provides what information must be included in the valuation reports) conflicts with this interpretation.

Accordingly, WAC 284-30-391 requires insurers itemize and explain condition adjustments to either the loss vehicle or the comparable vehicles.

**C. BREACH OF CONTRACT**

In Washington, an insurance policy is construed as a contract and given "'fair, reasonable, and sensible construction as would be given to the contract by the average person purchasing insurance.'" *Xia v. ProBuilders Specialty Ins. Co.*, 188 Wn.2d 171 (2017), *as modified* (Aug. 16, 2017)(*quoting Key Tronic Corp., Inc. v. Aetna (CIGNA) Fire Underwriters Ins. Co.*, 124 Wash.2d 618, 627 (1994)). To assert a claim for breach of contract, a plaintiff must allege the

existence of a valid contract, a breach of the contract, and damages. *See Meyers v. State*, 152 Wash. App. 823, 827, 828 (2009).

First National's motion to dismiss Plaintiff's breach of contract claim should be denied. First National did not dispute that the parties had a valid contract. As to breach, the insurance contract provides that Plaintiff will be given the "actual cash value" of the loss vehicle. The actual cash value is determined, in part, by applying WAC 284-30-391. First National argues that it did not breach the contract because it did not violate WAC 284-30-391. While the valuation report stated that it was reducing all three comparable vehicles by the exact same amount ($936), construing all factual allegations and conclusions in Plaintiff's favor as the Court must do for purposes of this motion, First National did not fully itemize and explain the deduction. The Complaint asserts that Plaintiff was damaged.

### D. BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

"Under Washington law, there is in every contract an implied duty of good faith and fair dealing that obligates the parties to cooperate with each other so that each may obtain the full benefit of performance." *Rekhter v. State, Dep't of Soc. & Health Servs.*, 180 Wn.2d 102, 112 (2014). In the context of insurance contracts, the duty of good faith and fair dealing requires that an insurer exercise discretion reasonably. *See Curtis v. N. Life Ins. Co.*, 147 Wash. Ap.. 1030 (2008).

First National's motion to dismiss Plaintiff's claim for breach of the duty of good faith and fair dealing should be denied. The allegations in Plaintiff's Complaint, if credited, raise sufficient questions regarding whether First National's exercised its discretion in setting the settlement price reasonably.

### E. VIOLATION OF THE CPA

Washington's CPA was enacted to protect the public from "unfair or deceptive acts or practices in the conduct of any trade or commerce." *Indoor Billboard/Washington, Inc. v. Integra Telecom of Washington, Inc.*, 162 Wn.2d 59, 73, 170 P.3d 10, 17 (2007)(*quoting* RCW 19.86.020). The CPA is to "be liberally construed that its beneficial purposes may be served." *Thornell v. Seattle Serv. Bureau, Inc.*, 184 Wn.2d 793, 799 (2015)(*quoting* RCW 19.86.920).

First National's motion to dismiss Plaintiff's CPA claim should be denied. First National argues that Plaintiff bases his CPA claim on alleged violations of 284-30-391, and because it did not violate WAC 284-30-391, it did not commit a per se violation of the CPA. As above, construing all facts, allegations and reasonable inferences in Plaintiff's favor, this Court cannot find that First National did not violate WAC 284-30-91.

**F. DECLARATORY OR INJUNCTIVE RELIEF**

First National asserts that because all Plaintiff's claims fail due to its compliance with WAC 284-30-391, the claims for declaratory and injunctive relief fail. As explained in the analysis of the other claims, at this stage in the litigation, First National's compliance with WAC 284-30-391 is at issue. Its motion to dismiss Plaintiff's claims for declaratory and injunctive relief should be denied.

**G. ADDITIONAL MATTERS**

The joint status report is due July 19, 2018. Dkt. 5. Parties should address additional scheduling requirements for class action cases, like a briefing schedule for class certification etc.

### III. ORDER

Therefore, it is hereby **ORDERED** that:

- Motion to Dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12 (b)(6) (Dkt. 25) **IS DENIED.**

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

Dated this 13th day of June, 2018.

*[signature: Robert J. Bryan]*

ROBERT J. BRYAN
United States District Judge

THIS ORDER VACATED BY MINUTE ORDER (DKT. 29) - 12