Honorable Robert J. Bryan

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT TACOMA

| | |
|---|---|
| CAMERON LUNDQUIST, an individual, and LEEANA LARA, an individual, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FIRST NATIONAL INSURANCE COMPANY OF AMERICA, a New Hampshire Corporation, and LM GENERAL INSURANCE COMPANY, an Illinois Corporation, and CCC INFORMATION SERVICES INCORPORATED, a Delaware Corporation,<br><br>Defendants. | No. 18-cv-05301-RJB<br><br>SECOND AMENDED COMPLAINT<br><br>Trial Date:  April 6, 2020 |

SECOND AMENDED COMPLAINT
Case No. 18-cv-05301
010743-13/1113972 V1



HAGENS BERMAN
1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

# TABLE OF CONTENTS

Page

I. NATURE OF THE CASE ................................................................................................ 1

II. JURISDICTION .............................................................................................................. 2

III. VENUE ............................................................................................................................ 3

IV. PARTIES ......................................................................................................................... 3

V. FACTUAL ALLEGATIONS .......................................................................................... 4

    A. First National and LMGIC obtain and rely on manipulated data from CCC to underpay total loss claims. ............................................................... 4

    B. First National underpaid the total loss claims of Plaintiff Lundquist. ................... 8

    C. LMGIC underpaid the total loss claims of Plaintiff Lara. ..................................... 9

VI. CLASS ACTION ALLEGATIONS .............................................................................. 10

FIRST CAUSE OF ACTION (BREACH OF CONTRACT—INSURER DEFENDANTS) ................................................................................................. 12

SECOND CAUSE OF ACTION (BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING—INSURER DEFENDANTS) ........................ 13

THIRD CAUSE OF ACTION (CONSUMER PROTECTION ACT, VIOLATION OF WASH. REV. CODE § 19.86.020— ALL DEFENDANTS) ................................... 13

FOURTH CAUSE OF ACTION (CIVIL CONSPIRACY—ALL DEFENDANTS) .................. 14

FIFTH CAUSE OF ACTION (DECLARATORY AND INJUNCTIVE RELIEF— ALL DEFENDANTS) ................................................................................................. 15

PRAYER FOR RELIEF .................................................................................................................. 16

JURY DEMAND ............................................................................................................................ 16

SECOND AMENDED COMPLAINT - i
Case No. 18-cv-05301
010743-13/1113972 V1



HAGENS BERMAN
1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

## I. NATURE OF THE CASE

1. When a person's vehicle is declared a total loss, an automobile insurance company must not underpay claims by manipulating the data used to value the vehicle. Specifically, Washington law[1] prohibits insurance companies from reducing claim values for total losses with arbitrary, unexplained, and unjustified adjustments to the condition of comparable vehicles that are used to value the loss, bearing no relation to actual cash value. An insurer also must not misstate or conceal material facts that bear upon its estimate of value. Likewise, companies that sell valuation data to the insurers must not make arbitrary, unexplained, and unjustified adjustments to vehicle values and must ensure that they provide accurate and reliable vehicle values to insurers that pay total loss claims.

2. In negotiating and settling total loss claims, Defendants First National Insurance Company of America (First National), LM General Insurance Company (LMGIC), and CCC Information Services Inc. (CCC) flagrantly violate these rules. Defendants reduce the value of comparable vehicles by an arbitrary amount that they deem a "condition adjustment." They do so without itemizing or explaining the basis for the adjustment as required by Washington law. Defendants apply a uniform "condition adjustment" to multiple comparable vehicles involved in a valuation without even distinguishing one vehicle from the next. These arbitrary and unjustified condition adjustments artificially and improperly reduce claim payments by hundreds or thousands of dollars to plaintiffs and thousands of other policyholders.

3. First National and LMGIC (collectively, Insurer Defendants) are insurance companies bound to process claims fairly and make their insureds whole after an accident. The Insurer Defendants' systematic under-valuations and underpayments violate their insurance contracts with their insureds as well as Washington regulations[2] governing the adjustment of total loss claims. The Insurer Defendants' actions also violate Washington prohibitions on consumer deception and settling insurance claims in bad faith.

---

[1] *See, e.g.*, WAC 284-30-320 and 391.

[2] *See, e.g.*, WAC 284-30-320 and 391.

SECOND AMENDED COMPLAINT - 1
Case No. 18-cv-05301
010743-13/1113972 V1



1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

4. Defendant CCC Information Services (CCC) represents that it is a "leading provider" of "big data insights" to the insurance industry. CCC provides vehicle valuations to First National and LMGIC for paying total-loss vehicle claims. CCC unlawfully conspires with the Insurer Defendants to undervalue total loss claims and acts contrary to law, including total loss regulations WAC 284-30-320 and 391, by furnishing arbitrary and unexplained condition adjustments for use in the claims handling process.

5. Plaintiffs bring this class action on behalf of all those insured under automobile insurance policies issued in the State of Washington by First National Insurance or LM General Insurance Company whose claim valuations were based upon the values of comparable vehicles that were reduced by artificial, unexplained "condition adjustments" that were supplied by CCC.

6. Plaintiffs seek for themselves and the class compensatory damages, treble damages, and attorney's fees, as well as declaratory and injunctive relief.

## II. JURISDICTION

7. This Court has jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because the proposed Class consists of 100 or more members; the amount in controversy exceeds $5,000,000, exclusive of costs and interest; and minimal diversity exists. Plaintiffs are citizens of Washington, First National is a citizen of New Hampshire (where it is incorporated and has its principal place of business), LMGIC is a citizen of Illinois (where it is incorporated) and has its principal place of business in Massachusetts, and CCC is a citizen of Delaware (where it is incorporated) and has its principal place of business in Illinois.

8. This Court has personal jurisdiction over First National because First National is a corporation licensed and authorized to do business in Washington and has transacted business in Washington. This Court has personal jurisdiction over LMGIC because LMGIC is a corporation licensed and authorized to do business in Washington and has transacted business in Washington. This Court has personal jurisdiction over CCC because CCC has purposefully directed its activities toward Washington by contracting to provide valuation services to insurance carriers in Washington for use in settling and underpaying total loss claims of

SECOND AMENDED COMPLAINT - 2
Case No. 18-cv-05301
010743-13/1113972 V1

HB HAGENS BERMAN
1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

Washington resident insureds. This Court has personal jurisdiction over Plaintiffs because Plaintiffs consent to this Court's jurisdiction.

### III.   VENUE

9. Venue is proper in this District under 28 U.S.C. § 1391 because this is the District in which Plaintiffs' insurance benefits were denied and the cause of action arose.

### IV.   PARTIES

10. Plaintiff Cameron Lundquist ("Lundquist") was at all relevant times a resident of the State of Washington.

11. At all times pertinent, Lundquist was insured under a policy of automobile insurance with First National that included coverage for the total loss of a vehicle.

12. Plaintiff Leeana Lara ("Lara") was at all relevant times a resident of the State of Washington.

13. At all times pertinent, Lara was insured under a policy of automobile insurance with LMGIC that included coverage for the total loss of a vehicle.

14. First National Insurance Company is a New Hampshire corporation with its principal place of business in New Hampshire.

15. First National is an underwriting company wholly owned by Safeco Insurance Company ("Safeco"), a New Hampshire insurance company. Safeco is wholly owned by Liberty Mutual Agency Company, an insurance company incorporated in Delaware, which is wholly owned by Liberty Mutual Insurance Company, a Massachusetts insurance company (Liberty Mutual).

16. LM General Insurance Company is an Illinois corporation with its principal place of business in Massachusetts.

17. LM General Insurance Company is also wholly owned by Liberty Mutual.

18. CCC is a Delaware corporation with its principal place of business in Illinois.

SECOND AMENDED COMPLAINT - 3
Case No. 18-cv-05301
010743-13/1113972 V1



1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

## V.   FACTUAL ALLEGATIONS

**A.   First National and LMGIC obtain and rely on manipulated data from CCC to underpay total loss claims.**

19. All allegations contained in previous paragraphs are incorporated herein by reference.

20. First National is the second-largest personal lines insurance company in the United States. First National issues automobile insurance policies to consumers in the State of Washington.

21. Safeco touts itself and its subsidiaries as reliable and trustworthy sources of insurance coverage. On its website, Safeco states "trust matters when it comes to some of your biggest investments, like your home, car, and even your boat." Safeco claims that it "has always kept with the tradition of putting our customers first."

22. The Defendants' parent Company, Liberty Mutual, is the sixth largest automobile insurance company in the nation. It wrote more than $10.7 million in auto insurance policies in 2017, approximately 5% of the national market share.

23. Liberty Mutual's website boasts that it and its subsidiaries "[help] people preserve and protect what they earn, build, own, and cherish. Keeping this promise means we are there when our customers need us most."

24. But when the Insurer Defendants' customers' cars are wrecked in life-changing accidents, or are otherwise totaled, they betray these principles, playing games and putting profits ahead of people. With CCC's assistance, the Insurer Defendants fudge the numbers to shortchange vulnerable consumers, who are relying on the Insurer Defendants to pay fair value so they can afford to buy a replacement, which in many cases was their sole car.  Pursuant to their agreement, CCC provides the Insurer Defendants with valuation reports that apply unjustified, unexplained, and unitemized condition adjustments to the values of comparable vehicles used to value total loss claims. All three Defendants work in concert to create policies and infrastructure that cheat insureds out of dollars to which they are entitled.

SECONDAMENDED COMPLAINT - 4
Case No. 18-cv-05301
010743-13/1113972 V1

HAGENS BERMAN
1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

25. As wholly owned subsidiaries of the same parent company, Liberty Mutual, First National and LMGIC share common personnel, policies, and infrastructure regarding the handling of total loss claims in Washington. For example, the companies share their administrative headquarters at 175 Berkeley Street, Boston, Massachusetts. According to First National's 2017 Annual Statement, the Defendants' Federal income tax returns are consolidated. Defendants are also party to a management services agreement under which Liberty Mutual provides each Defendant with office infrastructure and services including risk underwriting, claims processing, claims adjustments, policyholder services, and contract management and administration. Both companies use common personnel and resources for statutory compliance matters. Both companies use CCC valuation reports to value loss vehicles with no distinction in form or substance between reports generated for one company or the other.

26. Upon information and belief, both companies follow a single set of guidelines, methods, and policies regarding the application of condition adjustments to loss vehicles and comparable vehicles.

27. First National and LMGIC's standard form automobile policies both provide coverage for the total loss of a vehicle.

28. For total loss claims, the Defendants must base any cash settlement offer on the "actual cash value of a comparable motor vehicle." WASH. ADMIN. CODE § 284-30-391(2).

29. In the event of a total loss, First National and LMGIC's policies each promise they will pay the insured the "actual cash value" of the vehicle before the loss.

30. For total loss claims, the Defendants must "[b]ase all offers on itemized and verifiable dollar amounts for vehicles that are currently available . . . using appropriate deductions or additions for options, mileage or condition when determining comparability." WASH. ADMIN. CODE § 284-30-391(4)(b).

31. For total loss claims, "[a]ny additions or deductions from the actual cash value must be explained to the claimant and must be itemized showing specific dollar amounts." WASH. ADMIN. CODE § 284-30-391(5)(d). The purpose of this requirement is to ensure that any

SECOND AMENDED COMPLAINT - 5
Case No. 18-cv-05301
010743-13/1113972 V1

HB HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

adjustments are reasonable and justified and to ensure that consumers have the ability to evaluate and challenge any deductions that are improper.

32. Systemically, the Defendants fail to offer and pay the actual cash value.

33. First National and LMGIC base their offers and payments on manipulated data and reports furnished by CCC that do not satisfy Washington law, imposing arbitrary and unexplained "condition adjustments" to artificially reduce the values of comparable vehicles.

34. CCC advertises itself as "a leading provider of innovative cloud, mobile, telematics, hyperscale technologies and apps for the automotive, insurance, and collision repair industry." Its website states that "CCC's solutions and big data insights are delivered through the powerful CCC ONE™ platform, which connects a vast network of 350+ insurance companies, 24,000+ repair facilities, OEMS, hundreds of parts suppliers, and dozens of third-party data and service providers." CCC caters to the needs and demands of the insurance industry, stating its aim to "[t]rack claim process efficiencies and help ensure customers [insurers] are happy and engaged."

35. CCC also touts the accuracy of its total loss valuations on its website. The website states, "CCC ONE Valuation offers accurate, verifiable total loss valuations." CCC promises to give insurers' customers "the confidence of knowing they're getting a vehicle valuation based on verifiable data." CCC says its services will "BOOST YOUR CUSTOMERS' CONFIDENCE" by making it "easier for you to explain the valuation to your customers."

36. CCC and the Insurer Defendants collaborate in the creation of the valuation report for each total loss vehicle. Under the contracts between CCC and the Insurer Defendants, CCC and the Insurer Defendants agreed that CCC would provide vehicle valuations based on current market data for total loss claims as well as a written report with that data for each total loss vehicle. The Insurer Defendants have contracted with CCC to furnish valuation reports to be used in the process of valuing total loss claims and adjusting the claims for insureds. Upon information and belief, the Insurer Defendants conducted due diligence on CCC's methodology or knew or should have known before contracting that CCC's application of condition

SECOND AMENDED COMPLAINT - 6
Case No. 18-cv-05301
010743-13/1113972 V1

HAGENS BERMAN
1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

adjustments to the values of comparable vehicles did not comply with Washington law and results in deception, delays, and underpayments of motor vehicle total loss claims.

37. For each claim, the Insurer Defendants provide basic information about the loss vehicle and its condition and configuration. CCC then populates the report with the sales prices of purportedly comparable vehicles it identified that recently sold or were for sale in the geographic area of the insured, and then applies a downward condition adjustments to the values of those comparable vehicles. CCC takes an active role in collecting valuation data on comparable vehicles and then reducing those valuations to serve the economic interests of the insurer. These reports are arbitrary, unexplained, unjustified, unitemized, inconsistent, and contrary to Washington law, as alleged throughout this Complaint.

38. The reports contain a purported valuation for the loss vehicle based upon the data in the report. Upon information and belief, the Insurer Defendants verify the results of some or all of CCC's total loss valuations and know, or should know, that the application of condition adjustments to the values of comparable vehicles does not comply with Washington law and results in deception, delays, and underpayments of motor vehicle total loss claims.

39. Upon information and belief, CCC is aware that its total loss valuation method does not comply with Washington law. CCC designs its products and services to serve the needs of the insurance industry nationwide. It markets its and documents its products and services to insurers on a state-specific basis. Washington's total loss regulations, WAC 284-30-320 and -391, expressly require itemization and explanation of condition adjustments. But CCC furnishes the valuation reports to the Insurer Defendants anyway to further the economic interests of the Insurer Defendants at the expense of their insurance customers.

40. The Insurer Defendants offer each insured a claim settlement equivalent to the valuation amount found on the report.

41. The valuation reports reduce the estimated values of comparable vehicles, citing a "condition adjustment," but fail to itemize or explain the basis for these condition adjustments. These condition adjustments are arbitrary and unjustified. Indeed, even though each comparable vehicle has unique characteristics, the reports reduce the value of multiple comparable vehicles

SECOND AMENDED COMPLAINT - 7
Case No. 18-cv-05301
010743-13/1113972 V1

HAGENS BERMAN
1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

by the same amount, down to the last dollar, without any itemization or explanation for the amount. These blind and arbitrary reductions bear no relation to the actual fair market value of the comparable vehicles or the loss vehicle. The application of an arbitrary condition adjustment to reduce the value of comparable vehicles artificially reduces the valuation of the loss vehicle to benefit the insurer at the expense of the insured.

**B.     First National underpaid the total loss claims of Plaintiff Lundquist.**

42.     Lundquist owned a vehicle which was involved in an accident and damaged so seriously as to be a total loss.

43.     Lundquist made a claim with First National for the total loss of his vehicle. First National provided written settlement offers to Lundquist.

44.     CCC furnished a valuation report to First National to be used in adjusting the claim for the value of the vehicle, in accordance with its contract with First National. First National based each settlement offer upon the valuation report obtained from CCC.

45.     Lundquist was the owner of a 1998 Dodge Ram 2500 Quad Cab that was totaled in an accident in 2017. First National offered to pay, and did pay, $18,406.12 attributable to the value of the vehicle (minus deductible), citing the CCC valuation report. Lundquist was provided the CCC valuation report when First National presented its proposed adjustment. Days after the accident, First National emailed the CCC report to Lundquist together with a letter outlining the vehicle valuation and claim settlement offer that was based in part on—and specifically referred Lundquist to—the CCC valuation. The CCC valuation report was presented as an authoritative source supporting First National's determination of value. The CCC valuation report listed values of three different comparable vehicles and applied a negative uniform condition adjustment of $936 to all three of them without itemizing or explaining the basis of the adjustment as required by Washington law. The report reduced the amount of these comparable vehicles by exactly the same amount, regardless of any individual differences in the condition of the vehicles. These blanket adjustments were arbitrary and unjustified, and they resulted in an underpayment of $936.

SECOND AMENDED COMPLAINT - 8
Case No. 18-cv-05301
010743-13/1113972 V1

HB  HAGENS BERMAN
1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

46. First National and CCC have acted with at least reckless disregard of the rights of others by manipulating the numbers to settle total loss claims. First National and CCC have devised valuation methods that are unfair, misleading, deliberately inconsistent, and calculated to confuse and deceive consumers and their advocates in the settlement process.

47. First National's and CCC's practices have cost consumers tens of millions of dollars in losses as their claims go underpaid. Meanwhile, First National and CCC reap millions in wrongful profits by betraying the trust of First National insureds.

**C.  LMGIC underpaid the total loss claims of Plaintiff Lara.**

48. Lara owned a vehicle which was involved in an accident and damaged so seriously as to be a total loss.

49. Lara made a claim with LMGIC for the total loss of her vehicle. LMGIC provided written settlement offers to Lara.

50. LMGIC based each settlement offer upon a valuation report obtained from CCC.

51. Lara was the owner of a 2015 Dodge Charger SXT that was totaled in an accident in 2017. LMGIC offered to pay, and did pay, $15,560.93 based upon a valuation of $17,224.00 before applying taxes, fees, and deductions, citing its CCC valuation. Lara was provided the CCC valuation report when LM General presented its proposed adjustment. Days after the accident, LM General sent the CCC report to Lara together with a letter outlining the vehicle valuation and claim settlement offer based upon the CCC valuation. The CCC valuation report was presented as an authoritative source supporting LM General's determination of value. The CCC valuation report listed values of two different comparable vehicles and applied a negative uniform condition adjustment of $842 to both of them without itemizing or explaining the basis of the adjustment as required by Washington law. The report reduced the amount of these comparable vehicles by the same amount, regardless of any individual differences in the condition of the vehicles. These blanket adjustments were arbitrary and unjustified, and they resulted in an underpayment of $842.

52. As a result of LMGIC's undervaluation of Lara's vehicle and resulting dispute between Lara and LMGIC, the payment of Lara's claim was delayed leaving her without the

SECOND AMENDED COMPLAINT - 9
Case No. 18-cv-05301
010743-13/1113972 V1

HAGENS BERMAN
1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

settlement funds needed to purchase a replacement vehicle and causing her additional out-of-pocket losses including approximately $3,000 in fees for storage of the wreck charged by LMGIC as well as the expense of hiring an adjuster to dispute her claim.

53. LMGIC and CCC have acted with at least reckless disregard of the rights of others by manipulating the numbers to settle total loss claims. LMGIC and CCC have devised valuation methods that are unfair, misleading, deliberately inconsistent, and calculated to confuse and deceive consumers and their advocates in the settlement process.

54. LMGIC's and CCC's practices have cost consumers tens of millions of dollars in losses as their claims go underpaid. Meanwhile, LMGIC and CCC reap millions in wrongful profits by betraying the trust of LMGIC insureds.

## VI. CLASS ACTION ALLEGATIONS

55. This action is brought and may properly be maintained as a class action, as it satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of Federal Rule of Civil Procedure 23. Plaintiffs bring all claims herein individually and as a class action (for the class defined below), pursuant to Federal Rule of Civil Procedure 23.

56. The class consists of the following:

> All individuals insured by First National and LMGIC under a private passenger vehicle policy who, from the earliest allowable time to the date of judgment, received a first-party total loss settlement or settlement offer based in whole or in part on the price of comparable vehicles reduced by a "condition adjustment."

57. While the exact number of members cannot be determined, the class consists at a minimum of thousands of persons located throughout the State of Washington. The members of the class are therefore so numerous that joinder of all members is impracticable. The exact number of class members can readily be determined by documents produced by the Defendants.

58. There are questions of fact and law common to the class, including the following:

    i. Whether the Defendants applied arbitrary and unexplained condition adjustments to comparable vehicles to calculate the value of loss vehicles;



      ii.    Whether, through the foregoing practice, the Insurer Defendants breached their contracts with their insureds;

      iii.    Whether, through the foregoing practice, the Insurer Defendants committed a breach of the common law duty of good faith and fair dealing;

      iv.    Whether, through the foregoing practice, the Insurer Defendants violated the Insurance Fair Conduct Act, WASH. REV. CODE § 48.30.010 *et seq.*;

      v.    Whether, through the foregoing practice, the Insurer Defendants violated regulations governing unfair claims settlement practices including WASH. ADMIN. CODE § 284-30-330 *et seq.*;

      vi.    Whether, through the foregoing practice, the Defendants violated the Consumer Protection Act, WASH. REV. CODE § 19.86.020;

      vii.    Whether, through the foregoing practice, CCC negligently supplied information for the guidance of others;

      viii.    Whether, through the foregoing practice, CCC entered into an unlawful conspiracy with Insurer Defendants;

      ix.    Whether the Defendants' use of improper condition adjustments to value loss vehicles caused injury to Plaintiffs and the class;

      x.    Whether Defendants' actions were unreasonable, frivolous, or unfounded;

      xi.    Whether Defendants' actions were reckless, malicious, or willful;

      xii.    Whether Plaintiffs and the class are entitled to an award of compensatory damages;

      xiii.    Whether Plaintiffs and the class are entitled to an award of treble damages;

      xiv.    Whether Plaintiffs and the class are entitled to an award of attorney's fees;

      xv.    Whether Plaintiffs and the class are entitled to declaratory and injunctive relief.

59.    Plaintiffs have the same interests in this matter as all other members of the class, and their claims are typical of those of all members of the class. Plaintiffs' claims are coincident with and not antagonistic to those of other class members they seek to represent. Plaintiffs and all class members have sustained damages arising out of the Defendants' common course of conduct as outlined herein. The damages of each class member were caused by the Defendants' wrongful conduct.



60. Plaintiffs are committed to pursuing this action and have retained competent class counsel experienced in insurance litigation and class action litigation. Plaintiffs will fairly and adequately represent the interests of the class members.

61. Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(2) because the Defendants' actions are generally applicable to the class as a whole, and Plaintiffs seeks, *inter alia*, equitable remedies with respect to the class as a whole.

62. Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) because the common questions of law and fact enumerated above predominate over questions affecting only individual members of the class, and a class action is the superior method for fair and efficient adjudication of the controversy. The likelihood that individual members of the class will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation. Plaintiffs' counsel, highly experienced in insurance litigation and class action litigation, foresees little difficulty in the management of this case as a class action.

**FIRST CAUSE OF ACTION**
**(Breach of Contract—Insurer Defendants)**

63. Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

64. The First National and LMGIC insurance contracts specifically provide for payment of the "actual cash value" of a vehicle deemed a total loss.

65. The Insurer Defendants have breached their contracts by not offering to settle and by not settling claims based upon the actual cash value of loss vehicles. The Insurer Defendants departed from the use of actual cash values by basing their valuation and payment of the claim on values of comparable vehicles that have been artificially reduced by an arbitrary and unjustified "condition adjustment" that is not itemized or explained.

66. The Insurer Defendants' numerous breaches have resulted in a systematic failure to pay the actual cash value of total loss vehicles as required by contract.

67. The Insurer Defendants' breaches and violations have caused damage to Plaintiffs and the class.



## SECOND CAUSE OF ACTION
### (Breach of the Implied Covenant of Good Faith and Fair Dealing—Insurer Defendants)

68. Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

69. The Insurer Defendants owed Plaintiffs and class members, as their insureds, a duty of good faith and fair dealing at all times during the existence of the insurance contract and while providing automobile insurance coverage, including when handling total loss claims for their insureds.

70. Insurer Defendants purposefully, in bad faith, and without regard to the rights of the Plaintiffs and the class, failed to pay the actual cash value of total loss vehicles. Insurer Defendants' actions breached the insurance contract and were unreasonable, frivolous, and unfounded.

71. Insurer Defendants' unfair acts and/or acts of bad faith include basing their valuation and payment of claims on values of comparable vehicles that have been artificially reduced by an arbitrary and unjustified "condition adjustment" that is not itemized or explained.

72. Insurer Defendants breached the covenant of good faith and fair dealing with the aforementioned conduct.

73. Insurer Defendants' breach of the obligation of good faith and fair dealing caused Plaintiffs and class members to incur damages as more fully set forth below.

## THIRD CAUSE OF ACTION
### (Consumer Protection Act, Violation of WASH. REV. CODE § 19.86.020— All Defendants)

74. Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

75. Defendants' actions complained of herein are deceptive trade practices that have the capacity to and do deceive consumers, as Defendants unreasonably denied payment of benefits to Plaintiffs and the class and knowingly misrepresented the basis for their total loss valuations. Insurer Defendants failed to adopt and implement reasonable standards for the investigation of claims. Insurer Defendants failed to conduct a reasonable investigation regarding

SECOND AMENDED COMPLAINT - 13
Case No. 18-cv-05301
010743-13/1113972 V1



1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

their claims payments. Insurer Defendants further made false representations as to the characteristics and benefits of their total loss coverage and insurance policies and represented that they were of a particular standard, quality, or grade knowing they were not. CCC intentionally or negligently supplied false and misleading valuation data to Insurer Defendants for the guidance of Insurer Defendants and their customers in the settlement of total loss claims, knowing the information would be used for this purpose and that the insured would see and rely on CCC's comparables. CCC's recommended comparable valuations were false because they included condition adjustments to the values of comparable vehicles that were unjustified, arbitrary, unitemized, and unexplained. These adjustments were false because they had no basis in fact, and regardless they resulted in a false statement of the value of the loss vehicle because they are contrary to Washington law and should not have been applied.

76. Defendants' aforementioned conduct continues to occur in the course of their business. Defendants' conduct is part of a generalized course of conduct repeated on thousands of occasions, and thus has an impact on the public interest.

77. Defendants' aforementioned conduct is in violation of the Washington Consumer Protection Act, in particular, but not limited to, WASH. REV. CODE § 19.86.020.

78. As a result of Defendants' actions, Plaintiffs and class members incurred damages as more fully set forth below.

**FOURTH CAUSE OF ACTION**
**(Civil Conspiracy—All Defendants)**

79. Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

80. As alleged above, CCC and the Insurer Defendants entered into agreements under which CCC would furnish the Insurer Defendants with valuation reports that undervalued total loss claims by applying unjustified, unexplained, and unitemized condition adjustments to the values of comparable vehicles. The use of these valuation reports to process and underpay claims violates the Insurer Defendants' contracts with their insureds as well as the Washington Consumer Protection Act, Wash. Rev. Code § 19.86.020.



81. The agreements between CCC and the Insurer Defendants constitute an agreement to accomplish a unlawful purposes, to wit, the breach of the insurance contracts (including provisions of Washington law that dictate the method by which total loss claims are valued) and Washington's prohibitions of unfair and deceptive claims handling practices. The agreements between CCC and the Insurer Defendants therefore constitute a civil conspiracy under Washington law.

82. As a result of Defendants' actions, Plaintiffs and class members incurred damages as more fully set forth below.

**FIFTH CAUSE OF ACTION**
**(Declaratory and Injunctive Relief—All Defendants)**

83. Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

84. Plaintiffs bring this cause of action for themselves and the class pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. § 2201 seeking a declaration that, for those who maintain an auto insurance policy with the Insurer Defendants, it is a violation of Washington law and the insurance contract for all Defendants to base their valuation and/or payment of claims on values of comparable vehicles that have been artificially reduced by an arbitrary and unjustified "condition adjustment" that is not itemized or explained.

85. This court has the power to declare the rights of said First National and LMGIC policyholders and those who would be insured under such policies and who may suffer similar losses in the future, as well as those who have suffered valuation-related losses.

86. Plaintiffs, for themselves and on behalf of the Class, seek a declaration of rights under the First National policy and the LMGIC policy, and seek a declaration of the rights and liabilities of the parties herein.

87. With respect to Defendants' continuing unlawful practices, Plaintiffs have no plain, speedy, or adequate remedy at law, the interests of the parties favor an injunction, and an injunction is in the public interest. Plaintiffs therefore seeks an order permanently enjoining all Defendants from basing their valuations and/or payments of claims on values of comparable


1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

vehicles that have been artificially reduced by an arbitrary and unjustified "condition adjustment" that is not itemized or explained.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for the following judgment:

A. An Order certifying this action as a class action, including certifying each cause of action under the appropriate subsection of Fed. R. Civ. P. 23;

B. An Order appointing Plaintiffs as class representatives and appointing the undersigned counsel to represent the class;

C. Declaratory and injunctive relief, including an injunction requiring Defendants to cease and desist from basing their valuation and payment of the claim on values of comparable vehicles that have been artificially reduced by an arbitrary and unjustified "condition adjustment" that is not itemized or explained;

D. Treble damages under common law and by statute, under WASH. REV. CODE § 19.86.090;

E. Compensatory damages as warranted by Defendants' breach of the contracts of insurance, and their bad faith;

F. An award of attorney's fees and costs, as provided by law and/or as would be reasonable from any recovery of monies recovered for or benefits bestowed upon the class; and

G. Such other and further relief as this Court may deem just, equitable, or proper, including a designation that any unclaimed monies may go to the next best use.

## JURY DEMAND

Pursuant to Rule Local Rules W.D. Wash. LCR 38, Plaintiffs demand a trial by jury of all of the claims asserted in this complaint so triable.



| | |
|---|---|
| Dated: April 26, 2019 | Respectfully submitted, |
| | HAGENS BERMAN SOBOL SHAPIRO LLP |
| | By   */s/ Steve W. Berman* |
| | Steve W. Berman |
| | Steve W. Berman (WSBA #12536) |
| | HAGENS BERMAN SOBOL SHAPIRO LLP |
| | 1301 Second Avenue, Suite 2000 |
| | Seattle, WA  98101 |
| | Telephone: (206) 623-7292 |
| | Facsimile:  (206) 623-0594 |
| | steve@hbsslaw.com |
| | |
| | Robert B. Carey (*pro hac vice*) |
| | John M. DeStefano (*pro hac vice*) |
| | HAGENS BERMAN SOBOL SHAPIRO LLP |
| | 11 West Jefferson Street, Suite 1000 |
| | Phoenix, AZ  85003 |
| | Telephone: (602) 224-2628 |
| | rob@hbsslaw.com |
| | johnd@hbsslaw.com |
| | |
| | Marc A. Goldich (*pro hac vice*) |
| | AXLER GOLDICH LLC |
| | 1520 Locust Street, Suite 301 |
| | Philadelphia, Pennsylvania 19102 |
| | Telephone: (267) 534-7400 |
| | mgoldich@axgolaw.com |
| | |
| | David Woloshin (*pro hac vice*) |
| | Dina Ronsayro *(pro hac vice)* |
| | ASTOR WEISS KAPLAN & MANDEL LLP |
| | 200 South Broad Street, Suite 600 |
| | Philadelphia, PA 19102 |
| | Telephone: (215) 790-0100 |
| | dwoloshin@astorweiss.com |
| | dronsayro@astorweiss.com |

SECOND AMENDED COMPLAINT - 17
Case No. 18-cv-05301
010743-13/1113972 V1



## CERTIFICATE OF SERVICE

I hereby certify that on April 26, 2019 a true and correct copy of the foregoing was filed electronically by CM/ECF, which caused notice to be sent to all counsel of record.

                                          s/ *Steve W. Berman*
                                          Steve W. Berman

SECOND AMENDED COMPLAINT - 18
Case No. 18-cv-05301
010743-13/1113972 V1

HAGENS BERMAN
1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594