HON. ROBERT J. BRYAN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CAMERON LUNDQUIST, an individual, and LEEANA LARA, an individual, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

FIRST NATIONAL INSURANCE COMPANY OF AMERICA, a New Hampshire Corporation, and LM GENERAL INSURANCE COMPANY, an Illinois Corporation, CCC INFORMATION SERVICES INCORPORATED, a Delaware Corporation,

Defendants.

No. 18-cv-05301-RBJ

**MOTION FOR CLASS CERTIFICATION**

NOTE ON MOTION CALENDAR: May 21, 2020

ORAL ARGUMENT REQUESTED

Trial Date: November 16, 2020





## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........ 1

II. BACKGROUND ........ 1

A. As an automobile insurer, Liberty Mutual must adopt an accurate total loss valuation method that complies with the law. ........ 1

B. Liberty Mutual and CCC apply unitemized, unexplained, inappropriate condition adjustments across the class. ........ 2

C. The condition adjustments to comparable vehicles are a sham, designed to deceive class members and undervalue claims. ........ 5

D. [redacted] ........ 5

E. [redacted] ........ 6

F. Liberty Mutual and CCC's systematic undervaluations result in underpayments of insurance claims. ........ 9

G. By applying condition adjustments to the values of comparable vehicles, Liberty Mutual and CCC undervalued Plaintiffs' total loss claims. ........ 11

III. ARGUMENT ........ 12

A. The class definition. ........ 12

B. The Class meets the requirements of Rule 23(a). ........ 13

1. The Class is sufficiently numerous. ........ 13

2. Plaintiffs' claims are typical of those of the Class. ........ 13

3. Adequacy of representation is satisfied under Rule 23(a)(4). ........ 15

C. Plaintiffs satisfy commonality because the condition adjustments present numerous questions common to the class. ........ 16

D. The Class meets the requirements of Rule 23(b). ........ 18

HAGENS BERMAN
1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594






1. Common issues of fact and law predominate under Rule 23(b)(3) ..... 18

a. Breach of contract ..... 18

b. Breach of the implied covenant of good faith and fair dealing. ..... 21

c. Violations of the Washington Consumer Protection Act ..... 22

d. Civil conspiracy ..... 22

E. Class certification is appropriate under Rules 23(b)(2) and (c)(4). ..... 24

IV. CONCLUSION ..... 24





# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Am. Med. Sys., Inc.*,
75 F.3d 1069 (6th Cir.1996) ....................16

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997)....................18

*Bowerman v. Field Asset Servs., Inc.*,
242 F. Supp. 3d 910 (N.D. Cal. 2017) ....................23

*Erica P. John Fund, Inc. v. Halliburton Co.*,
563 U.S. 804 (2011)....................18

*Frlekin v. Apple Inc.*,
309 F.R.D. 518 (N.D. Cal. 2015)....................13

*Kirkpatrick v. Ironwood Communs, Inc.*,
No. C05-1428JLR, 2006 WL 2381797 (W.D. Wash. Aug. 16, 2006) ....................16

*Lundquist v. First Nat'l Ins. Co. of Am.*,
No. 18-5301 RJB, 2018 WL 3344791 (W.D. Wash. July 9, 2018) ....................1, 3, 19

*Meyer v. Portfolio Recovery Assocs., LLC*,
707 F.3d 1036 (9th Cir. 2012) ....................13

*Microsoft Corp. v. Motorola, Inc.*,
963 F. Supp. 2d 1176 (W.D. Wash. 2013)....................21

*In re Orthopedic Bone Screw Prods. Liab. Litig.*,
176 F.R.D. 158 (E.D. Pa. 1997)....................16

*Pierce v. Novastar Mortg., Inc.*,
No. C05-5835RJB, 2006 WL 2571984 (W.D. Wash. Sept. 5, 2006)....................16

*Rai v. Santa Clara Valley Transp. Auth.*,
308 F.R.D. 245 (N.D. Cal. 2015)....................13, 18

*Reichert v. Keefe Commissary Network, L.L.C.*,
331 F.R.D. 541 (W.D. Wash. 2019) ....................13

*Roshandel v. Chertoff*,
554 F.Supp.2d 1194 (W.D. Wash. June 3, 2008) ....................16

*Shields v. Morgan Fin., Inc.*,
125 P.3d 164 (Wash. Ct. App. 2005)....................22






1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

*Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990) ....................23

*Stearns v. Ticketmaster Corp.*, 655 F.3d 1013 (9th Cir. 2011) ....................20

*Torres v. Mercer Canyons, Inc.*, 305 F.R.D. 646 (E.D. Wash. 2015), *aff'd*, 835 F.3d 1125 (9th Cir. 2016) ....................15

*Truck Ins. Exch. v. Vanport Homes, Inc.*, 58 P.3d 276 (Wash. 2002)....................22

*Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168 (9th Cir. 2010) ....................13, 23

*Work-Force Sols., Inc v. Antoine Creek Farms, LLC*, 35049-5-III, 2018 WL 1603056 (Wash. Ct. App. Apr. 3, 2018)....................18

**Statutes**

RCW 19.86.020 ....................17, 22

RCW 48.30.010 *et seq.* ....................17

WAC 284-30-320(1)....................1

WAC 284-30-320(3)....................2, 18, 19, 20

WAC 284-30-320(3), -391....................1

WAC 284-30-320(15)....................1

WAC 284-30-330 *et seq.* ....................17

WAC 284-30-330....................22

WAC 284-30-391....................9, 21

WAC 284-30-391(2)....................2

WAC 284-30-391(4)....................2, 18

WAC 284-30-391(5)(d) ....................19

**Other Authorities**

Fed. R. Civ. P. 23.................... *passim*

Fed. R. Evid. 1006 ....................9





# I. INTRODUCTION

In valuing motor vehicle total loss insurance claims, condition adjustments to comparable vehicles must be itemized, appropriate, and explained to the insured. WAC 284-30-320(3), -391; *Lundquist v. First Nat'l Ins. Co. of Am.*, No. 18-5301 RJB, 2018 WL 3344791, at *4 (W.D. Wash. July 9, 2018). Defendants First National, LM General (collectively, "Liberty Mutual") and CCC violate this rule through a uniform, systematic, and company-wide process that changes valuations in their favor using a flat, unitemized, and arbitrary "condition adjustment" that reduces the values of all comparable vehicles located on dealer lots—and ultimately the valuation of each insured's claim. The adjustment is a one-size-fits-all amount imposed on each dealer comp in a given valuation, without itemization or justification as required by law. As this Court has recognized, the exact same deduction cannot rationally apply to different dealer vehicles on different dealer lots. This practice breaches the contract across the entire class, is deceptive, and violates Washington claims handling regulations by abdicating the investigation obligation and providing consumers with false information about the benefits owed. The Court should certify a class of insureds on Plaintiffs' claims of breach of contract, breach of the implied covenant of good faith and fair dealing, consumer deception, and conspiracy against Liberty Mutual and CCC.

# II. BACKGROUND

## A. As an automobile insurer, Liberty Mutual must adopt an accurate total loss valuation method that complies with the law.

Generally, a motor vehicle is determined to be a total loss for insurance purposes when "the cost of parts and labor, plus the salvage value, meets or exceeds, or is likely to meet or exceed, the 'actual cash value' of the loss vehicle." WAC 284-30-320(15). In such an instance, Washington law requires that the auto insurer provide compensation for the actual cash value of the vehicle, defined as "the fair market value of the loss vehicle immediately prior to the loss." WAC 284-



HAGENS BERMAN
1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

30-320(1). Liberty Mutual admits that in valuing total loss claims, the accuracy of the valuation is a paramount concern.[1] Liberty Mutual admits that it must put the interests of its insureds first, and that the valuation of a total loss vehicle must be definitive—it is not an opening offer in a negotiation with the insured.[2] Liberty Mutual understands and insists that a given valuation method should produce only one accurate number for a given total loss valuation.[3] In other words, a proper valuation method does not produce a set of numbers or a range for a given valuation: It produces a single valuation amount that the insurer and the insured then use in valuing the claim.[4]

**B. Liberty Mutual and CCC apply unitemized, unexplained, inappropriate condition adjustments across the class.**

Insurers, Liberty Mutual included, must base all cash settlement *offers* on the "actual cash value of a comparable motor vehicle"—calculated according to law. WAC 284-30-391(2). "To achieve comparability, deductions or additions for options, mileage or condition may be made *if they are itemized and appropriate in dollar amount*." WAC 284-30-320(3) (emphasis added). Similarly, Liberty Mutual must "[b]ase all offers on itemized and verifiable dollar amounts." WAC 284-30-391(4). Liberty Mutual breaches Washington law and the insurance contract whenever it does not itemize, justify, or explain an adjustment. Liberty Mutual also breaches Washington law and the standards of the insurance industry when it fails to conduct a reasonable investigation of every claim, fails to establish sufficient

[1] Nov. 22, 2019 Rule 30(b)(6) Dep. of Scott Kohl, DeStefano Ex. 1 ("Kohl Dep.") at 27:9-21. As wholly owned subsidiaries of the same parent company, Liberty Mutual, First National and LM General Insurance Company ("LMGIC") share common personnel, policies, and infrastructure regarding the handling of total loss claims in Washington. Insurer Defs.' Answer to Second Am. Compl., Doc. # 94 ¶ 26. Both companies use common personnel and resources for statutory compliance matters. Both companies use CCC One valuation reports to value loss vehicles. *Id.* To the extent they use of CCC reports, both companies follow a single set of guidelines, methods, and policies regarding the application of condition adjustments to loss vehicles and comparable vehicles. Kohl Dep. 20:4-7, 131:7-20.

[2] Kohl Dep. 216:15-22.

[3] Kohl Dep. 91:24-92:9.

[4] Kohl Dep. 102:11-13 ("We manage bottom up in terms of the value of the car is the value of the car. . . . The accuracy resides in the, in the, in the work prior to that."), 121:3-13.



HAGENS BERMAN
1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

standards for investigations, misrepresents facts to its insureds, or places its own interests ahead of its insureds'.

To conduct total loss valuations, Liberty Mutual contracted with CCC.[5] For each valuation, CCC generates a valuation report that derives the value of the loss vehicle by relying on adjusted values of one or more purportedly comparable motor vehicles.[6] Liberty Mutual's established procedure and practice is to obtain these reports from CCC and then, relying on the reports, offer settlements to insureds.[7]

[redacted]

Liberty Mutual admits that these condition adjustments are not itemized.[11] [redacted] The adjustments are not explained in any meaningful way.[13] Nor can they be verified. The valuation reports do not contain the basis for the adjustments or the information that would be needed to verify or confirm the charge—the adjustments are just injected without support or explanation.[14] They are not broken down to

---

[5] Ins. Def. Ans., Dkt. # 96 ¶ 37; CCC Ans., Dkt. # 103 ¶ 36.

[6] Ins. Def. Comb. Resp. to Pls.' Second Set of Combined Discovery at p. 10 (ROG 19), DeStefano Ex. 22.

[7] Jan 23, 2020 Dep. of Sarah Ramm, DeStefano Ex. 2 ("Ramm Dep.") at 83:1-84:12; Kohl Dep. 139:25-140:9.

[8] Feb. 21, 2020 Declaration of Larry Hausman-Cohen (Hausman-Cohen Decl.) ¶ 24.

[9] Hausman-Cohen Decl. ¶ 25.

[10] Hausman-Cohen Decl. ¶ 22.

[11] Kohl Dep. 174:12-18; *Lundquist*, 2018 WL 3344791, at *5; LUND_000051 at p. 9, DeStefano Decl., Ex. 3.

[12] FNIC0003419 at 1, DeStefano Ex. 10.

[13] *Lundquist*, 2018 WL 3344791, at *5; *Lundquist*, 2018 WL 3344791, at *5; Ramm Dep. 50:12-52:13.

[14] LUND_000051 at p. 9, DeStefano Ex. 3.

HAGENS BERMAN
1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594



reflect the condition of individual components.[15] Nor are they calculated with reference to any characteristics of a specific comparable vehicle.

The report advises that, by using the adjustments, Defendants adjust values to "normal wear condition," which is where Defendants position the loss vehicle.[17]

---

[15] *Id.*

[16] *Id.*; Hausman-Cohen Decl. ¶ 22.

[17] *Id.*

[18] Hausman-Cohen Decl. ¶ 23.

[19] CCC's 1st Supp. Resp. to Pls. Co t p. 32 (ROG 16), DeStefano Ex. 15; CCC_LUND00139267 at p. 19 ( ), DeStefano Ex. 16; CCC_LUND00139818 at p. 23, DeStef . 3, DeStefano Ex.. 18.

[20] CCC's 1st Supp. Resp. to Pls. Combined Disc. Reqs.—Interrogatories at p. 32 (ROG 16), DeStefano Ex.. 15; LUND_000051, DeStefano Ex. 3.



HAGENS BERMAN
1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

[redacted]

**C. The condition adjustments to comparable vehicles are a sham, designed to deceive class members and undervalue claims.**

Liberty Mutual and CCC present the condition adjustment to the loss vehicle prominently on the cover of the report[23] and itemize that adjustment on the cover and in the first few pages of the report. But these pages never address the condition of comparable vehicles—that adjustment appears on a single line of the report at the very end of the section listing information regarding the comps.[24] As Plaintiffs' expert will attest, presenting similar adjustments in this way violates standard financial reporting practice and reflects an intent to omit key information.[25]

**D.** [redacted]

[21] LUND_000051, DeStefano Ex. 3

[22] Hausman-Cohen Decl. at 22.

[23] *E.g.*, LUND_000051 at p. 1, DeStefano Ex. 3.

[24] LUND_000051 at p. 9, DeStefano Ex. 3.

[25] Feb. 21, 2020 Declaration of David Schwickerath (Schwickerath Decl.) attaching Expert Report at Ex. A. at 16-18.

[26] Kohl Dep. 58:6-16, 59:4-9; Ins. Def. Comb. Resp. to Pls.' 4th Set of Combined Disc. at p. 8 (ROG 23), DeStefano Ex. 21.

[27] E.g., FNIC0000536, DeStefano Ex. 4; FNIC0000539, DeStefano Ex. 5.

[28] Kohl Dep. 55:21-56:3; Ins. Def. Comb. Resp. to Pls.' 4th Set of Combined Disc. at p. 8 (ROG 23), DeStefano Ex. 21.

[29] Kohl Dep. 72:17-75:10.

HAGENS BERMAN
1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594



**E.**

[30] Kohl Dep. 79:6-16; FNIC0001847, DeStefano Ex. 8; FNIC0001900, DeStefano Ex. 8; FNIC0001846; FNIC0014271, DeStefano Ex. 8.

[31] FNIC0014271 at pp. 16-24, DeStefano Ex. 14.

[32] Kohl Dep. 78:17-79:16.

[33] Kohl Dep. 131:25-132:9.

[34] FNIC0014271 at 24, DeStefano Ex. 14.

[35] Hausman-Cohen Decl. ¶ 22.

[36] *Id.*

[37] Ramm Dep. at 83:1-84:12; Kohl Dep. 139:25-140:9.

[38] Kohl Dep. 178:20-179:4.



HAGENS BERMAN
1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

[redacted]

[redacted]

[39] Kohl Dep. 131:13-20, 143:18-145:25; Ramm Dep. 49:19-50:23.

[40] Kohl Dep. 264:20-22.

[41] Ramm Dep. 44:17-19 ("Adjusters do not determine the value at all. We do not put the numbers together like that. We rely on CCC to provide us the value.").

[42] Ins. Def. Comb. Resp. to Pls.' Second Set of Combined Discovery at p. 10 (ROG 16), DeStefano Ex. 22.

[43] Kohl Dep. 198:7-9.

[44] See above nn. 38-44.

[45] Kohl Dep. 29:19-21.

[46] Kohl Dep. 220:19-24; FNIC0006699, DeStefano Ex. 11.

[47] Kohl Dep. 216:13-15.

[48] Ramm Dep. 50:12-52:25.

HAGENS BERMAN
1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

[49] Ramm Dep. 86:14-87:2.

[50] Kohl Dep. 247:12-16.

[51] *Id.*

[52] Jan. 23, 2020 Dep. of Tawni Spargur, DeStefano Ex. 23, at 100:2-21.

[53] Kohl Dep. 131:13-20, 143:18-145:25; Ramm Dep. 49:19-50:23; Ins. Def. Comb. Resp. to Pls.' Second Set of Combined Discovery at p. 10 (ROG 16), DeStefano Ex. 22.

[54] Ramm Dep. 52:8-11.

[55] Kohl Dep. 131:13-20, 143:18-145:25; Ramm Dep. 49:19-50:23.

[56] Kohl Dep. 216:8-20; FNIC0000701 at 8-10, DeStefano Ex. 6; FNIC0006801, DeStefano Ex. 12.

[57] CCC_LUND00135488, DeStefano Ex. 19; CCC_LUND00135682, DeStefano Ex. 20; FNIC0003419, DeStefano Ex. 10; FNIC0008726, DeStefano Ex. 13.

[58] CCC_LUND00135682, DeStefano Ex. 20.

[59] Kohl Dep. 216:8-20; FNIC0000701 at 8-10, DeStefano Ex. 6; FNIC0006801, DeStefano Ex. 12.



HAGENS BERMAN
1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

### F. Liberty Mutual and CCC's systematic undervaluations result in underpayments of insurance claims.

As explained above, the condition adjustment to comparable vehicles is baked into the valuation process. So long as an adjuster is relying upon a CCC report to value the loss vehicle, that valuation will be reduced by condition adjustments to comparable vehicles.[60] Each total loss valuation must be based upon an accurate valuation of the loss vehicle itself using a method prescribed by WAC 284-30-391; adjusters are not free to use their discretion and value the loss vehicle in some other way.[61] If an insured identifies additional comparable motor vehicles, Liberty Mutual may provide those vehicles to CCC to determine whether they should be included in the valuation.[62] For any comps added to the valuation, CCC either generates a new valuation report for Liberty Mutual using those comps or Liberty Mutual applies CCC's condition adjustment to the comps itself.[63]

To confirm that Liberty Mutual sticks to and relies on CCC valuations in calculating its total loss payments, Plaintiff identified a random sample of 200 claim files, from which Liberty Mutual produced the 32 files that it believed departed from the CCC valuations.[64] Of those files, Plaintiffs found only two instances where a condition adjustment appeared on a CCC report and did not impact the ultimate claim payment—and then only because the insured submitted to a formal appraisal of the vehicle.[65] In two other instances, a NADA value or comps with non-CCC adjustments were used in addition to the values of comps subjected to the condition

[60] Schwickerath Decl. Ex. A at 16-18.

[61] Ramm Dep. 44:17-19 ("Adjusters do not determine the value at all. We do not put the numbers together like that. We rely on CCC to provide us the value.").

[62] Ins. Def. Comb. Resp. to Pls.' Second Set of Combined Discovery at p. 8 (ROG 15), DeStefano Ex. 22.

[63] Spargur Dep. 100:18-21.

[64] Because the claim files themselves are voluminous and not conveniently examined, a Rule 1006 summary of the basis for payment of each claim. DeStefano Decl. ¶ 28, Ex. 26.

[65] DeStefano Decl. ¶ 28 & Ex. 26. Aside from the appraised claims, the other reports identified by Liberty Mutual all relied upon the CCC condition adjustment (if any) even though they applied separate adjustments for upgrades, maintenance, and mileage.






1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

adjustment.[66] In all other instances (98% of the sample), the payment on the claim was reduced by the exact amount of the condition adjustment to comparable vehicles.[67]

[redacted]

Appraisals are a rare occurrence, as reflected by the fact that an appraisal was conducted in only 1% of sampled claims.[71] And the use of NADA values or non-CCC adjustments was similarly rare, again occurring 1.5% of the sampled claims. The lion's share of damages for the 98% of the class directly affected by the condition adjustment could be calculated by excluding this 2% portion of the class. Damages could be extrapolated for the valuations based on appraisal or NADA using this sample based on the actual costs of an appraisal or projected impact of condition adjustments that accompanied the NADA estimate. [72]

---

[66] DeStefano Decl. ¶ 28 & Ex. 26.

[67] DeStefano Decl. ¶ 28;

[68] Feb. 21, 2020 Declaration of Lance Kaufman (Kaufman Decl.) attaching Expert Report at Ex. A, at 5-14.

[69] *Id.*

[70] *Id.*

[71] DeStefano Decl. ¶ 28.

[72] Kaufman Decl. Ex. A at 5-14.

HAGENS BERMAN
1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

**G. By applying condition adjustments to the values of comparable vehicles, Liberty Mutual and CCC undervalued Plaintiffs' total loss claims.**

Both Plaintiff Lundquist and Lara had their total loss claim valuations and payments reduced by CCC and Liberty's condition adjustments to comparable vehicles. Lundquist was the owner of a 1998 Dodge Ram 2500 Quad Cab totaled in an accident in 2017.[73] Lundquist made a claim with First National for the total loss of his vehicle.[74] First National provided written settlement offers to Lundquist.[75] First National based each settlement offer upon a valuation report obtained from third-party CCC.[76] First National offered to pay, and did pay, $18,406.12 attributable to the value of the vehicle (minus deductible), citing its CCC valuation report.[77] The valuation report listed values of three comparable vehicles and applied a negative uniform condition adjustment of $936 to all three without itemizing or explaining the basis of the adjustment.[78] The report reduced the value of these comparable vehicles by exactly the same amount, regardless of any individual differences in the condition of the vehicles.[79] These blanket adjustments resulted in an underpayment of $936.[80]

Lara was the owner of a 2015 Dodge Charger SXT totaled in an accident in 2017.[81] Lara made a claim with LM General for the total loss of her vehicle. LMGIC provided written settlement offers to Lara.[82] LMGIC based each settlement offer upon a valuation report obtained from third-party CCC.[83] LMGIC offered to pay,

---

[73] SAC ¶ 45.

[74] SAC ¶ 43.

[75] *Id.*

[76] SAC ¶ 44.

[77] SAC ¶ 45.

[78] *Id.*; LUND_000051, DeStefano Ex. 3.

[79] SAC ¶ 45.

[80] *Id.*

[81] SAC ¶ 51.

[82] SAC ¶ 49.

[83] SAC ¶ 50.



HAGENS BERMAN
1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

and did pay, $15,560.93 based upon a valuation of $17,224.00 before applying taxes, fees, and deductions, citing its CCC valuation.[84] The CCC valuation report listed values of two comparable vehicles and applied a negative uniform condition adjustment of $842 to both without itemizing or explaining the basis of the adjustment as required by Washington law.[85] The report reduced the value of these comparable vehicles by the same amount, regardless of any individual differences in the condition of the vehicles.[86] These blanket adjustments were arbitrary and unjustified, and they resulted in an underpayment of $842.[87] As a result of LMGIC's undervaluation of Lara's vehicle and resulting dispute between Lara and LMGIC, the payment of Lara's claim was delayed leaving her without the settlement funds needed to purchase a replacement vehicle and causing her additional out-of-pocket losses including approximately $3,000 in fees for storage of the wreck charged by LMGIC as well as the expense of hiring a public adjuster to dispute her claim.[88]

## III. ARGUMENT

### A. The class definition.

Plaintiffs move to certify a class defined as follows:

> All individuals insured by First National Insurance Company of America or LM General Insurance Company under a private passenger vehicle policy who, from April 2012 to the present, settled or received an offer to settle a first-party total loss claim where the value of at least one comparable vehicle used in the adjustment of the claim was reduced by a "condition adjustment."

---

[84] SAC ¶ 51.

[85] *Id.*; LMG0000653, DeStefano Ex. 24.

[86] SAC ¶ 51; LMG0000653, DeStefano Ex. 24.

[87] SAC ¶ 51.

[88] SAC ¶ 52.





**B. The Class meets the requirements of Rule 23(a).**

**1. The Class is sufficiently numerous.**

Plaintiffs satisfy the numerosity requirement under Rule 23(a)(1) because the proposed class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1); *Rai v. Santa Clara Valley Transp. Auth.*, 308 F.R.D. 245, 253-54 (N.D. Cal. 2015). [REDACTED] oinder of this many class members is impracticable, so numerosity is satisfied. *Reichert v. Keefe Commissary Network, L.L.C.*, 331 F.R.D. 541, 550 (W.D. Wash. 2019).

**2. Plaintiffs' claims are typical of those of the Class.**

"The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (citation omitted). Plaintiffs' claims "are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1042 (9th Cir. 2012) (citation omitted). Typicality is readily satisfied in cases like this one, where all class members have suffered a "similar injury . . . and that injury is due to the same conduct" of the defendant. *Frlekin v. Apple Inc.*, 309 F.R.D. 518, 522 (N.D. Cal. 2015).

Plaintiffs' claims are substantially similar to the claims brought by the Class. Both Plaintiffs purchased total loss coverage from Liberty Mutual.[90] Each Plaintiff's insured vehicle was declared a total loss.[91] And both Plaintiffs received a settlement offer from Liberty Mutual that was based on a CCC valuation report applying unexplained, unitemized condition adjustments to the value of comparable

[89] Hausman-Cohen Decl., ¶¶ 21-25.

[90] SAC ¶¶ 11, 13.

[91] SAC ¶¶ 42, 48.



HAGENS BERMAN
1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

vehicles.[92] Both Plaintiffs' settlement payments were reduced by the amount of that adjustment.[93]

To prove their claims of breach of contract, bad faith, civil conspiracy, and consumer fraud, Plaintiffs will rely on common evidence that Liberty Mutual violated Washington law and relevant insurance standards by failing to itemize condition adjustments to comparable vehicles, applying unexplained and inappropriate adjustments, and abdicating their responsibility to determine actual cash value in a manner consistent with Washington law, including disregarding internal criticisms from adjusters that the adjustments were inappropriate.

Like Plaintiffs, all class members purchased total loss coverage from Liberty Mutual. All class members' loss vehicles were declared a total loss and virtually all class members' total loss claims were paid based on a CCC valuation report that reduced the value of their vehicle through the application of uniform condition

---

[92] SAC ¶¶ 45, 51.

[93] *Id.*

[94] Kohl Dep. 79:6-16; FNIC0001847, DeStefano Ex. 8; FNIC0001900, DeStefano Ex. 9; FNIC0001846, DeStefano Ex. 7; FNIC0014271, DeStefano Ex. 14.

[95] CCC_LUD00135488, DeStefano Ex. 19; CCC_LUND00135682, DeStefano Ex. 20; FNIC0003419, DeStefano Ex. 10; FNIC0008726, DeStefano Ex. 13.



HAGENS BERMAN
1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

adjustments to comparable vehicles. All were harmed by the same willful conduct of Liberty Mutual. Plaintiffs satisfy typicality.

**3. Adequacy of representation is satisfied under Rule 23(a)(4).**

Plaintiffs and their counsel meet the adequacy requirements. "To determine whether named plaintiffs will adequately represent a class, courts must resolve two questions: '(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class.'" *Torres v. Mercer Canyons, Inc.*, 305 F.R.D. 646, 653 (E.D. Wash. 2015), *aff'd*, 835 F.3d 1125 (9th Cir. 2016) (quoting *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011)). Adequacy depends on an "absence of antagonism" and a "sharing of interest" between class representatives and absentee class members. *Ellis*, 657 F.3d at 985. The Plaintiffs' interests, as proposed Class representatives, are aligned with those of the Class, and there are no conflicts or antagonism—they have suffered the same economic loss when their total loss claims were valued and paid based on CCC valuation reports containing unexplained and unitemized condition adjustments. Plaintiffs have also fulfilled their duties to the Class and will continue to fulfill their duties. Lundquist has been deposed and both Plaintiffs have responded to multiple sets of discovery requests.

In evaluating the adequacy of counsel, the Court "must" consider "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). In addition, the Court "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).



HAGENS BERMAN
1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

Plaintiffs' counsel is adequate. Hagens Berman has expended thousands of hours investigating Class claims and litigating discovery disputes regarding issues that impact the Class.[96] Additionally, Hagens Berman has extensive experience in complex and class-action litigation, including insurance bad faith and consumer-protection class actions, which stem from a full range of deceptive, unfair, and fraudulent business practices.[97] Counsel has demonstrated a commitment to efficiently and aggressively prosecute this case until its completion.

**C. Plaintiffs satisfy commonality because the condition adjustments present numerous questions common to the class.**

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." See Rule 23(a)(2); *see also Pierce v. Novastar Mortg., Inc.*, No. C05-5835RJB, 2006 WL 2571984, at *6 (W.D. Wash. Sept. 5, 2006) (citations omitted). But all questions of fact and law need not be common; "a single common issue is sufficient to meet the commonality requirement." *See Kirkpatrick v. Ironwood Communs, Inc.*, No. C05-1428JLR, 2006 WL 2381797, at *3 (W.D. Wash. Aug. 16, 2006); *see also Roshandel v. Chertoff*, 554 F.Supp.2d 1194, 1203 (W.D. Wash. June 3, 2008) (citations omitted); *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1080 (6th Cir.1996). The commonality test "is qualitative rather than quantitative…." *In re Am. Med. Sys.*, 75 F.3d at 1080 (quoting 1 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*, § 3.10, at 3–50 (3d ed.1992)); *see also In re Orthopedic Bone Screw Prods. Liab. Litig.*, 176 F.R.D. 158, 174 (E.D. Pa. 1997) ("[A] common question need only exist, not predominate, for the [commonality] requirement to be satisfied.")

The facts set forth above present numerous common questions of law and fact, including the following:

i. Whether Defendants itemized their deductions or additions to the values of comparable vehicles for options, mileage, and condition;

[96] DeStefano Decl. ¶ 29.

[97] DeStefano Decl. ¶ 30, Ex. 28.



HAGENS BERMAN
1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

ii. Whether Defendants deductions or additions to the values of comparable vehicles for options, mileages and condition were applied using an appropriate method;

iii. Whether the Defendants applied arbitrary and unexplained condition adjustments to comparable vehicles to calculate the value of loss vehicles;

iv. Whether, through the foregoing practice, Liberty Mutual breached contracts with its insureds;

v. Whether, through the foregoing practice, Liberty Mutual committed a breach of the common law duty of good faith and fair dealing;

vi. Whether, through the foregoing practice, the Defendants violated the Insurance Fair Conduct Act, RCW 48.30.010 *et seq.*;

vii. Whether, through the foregoing practice, the Defendants violated regulations governing unfair claims settlement practices including WAC 284-30-330 *et seq.*;

viii. Whether, through the foregoing practice, the Defendants violated the Consumer Protection Act, RCW 19.86.020;

ix. Whether the Defendants entered into an unlawful conspiracy;

x. Whether the Defendants' use of improper condition adjustments to value loss vehicles caused injury to Plaintiffs and the class;

xi. Whether Defendants' actions were unreasonable, frivolous, or unfounded;

xii. Whether Defendants' actions were reckless, malicious, or willful;

xiii. Whether Plaintiffs and the class are entitled to an award of compensatory damages;

xiv. Whether Plaintiffs and the class are entitled to an award of treble damages;

xv. Whether Plaintiffs and the class are entitled to an award of attorney's fees; and

xvi. Whether Plaintiffs and the class are entitled to declaratory and injunctive relief.

Each common issue justifies certification in this case.



HAGENS BERMAN
1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

**D. The Class meets the requirements of Rule 23(b).**

**1. Common issues of fact and law predominate under Rule 23(b)(3).**

The predominance requirement of Rule 23 is met where "questions of law or fact common to class members predominate over any questions affecting only individual members," and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Rule 23(b)(3) predominance tests if the proposed class is "sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). "Where common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Rai*, 308 F.R.D. at 262. Predominance analysis begins "with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011). Common issues predominate on each claim.

**a. Breach of contract**

"In order to prevail on a breach of contract claim, a party must establish that (1) a duty imposed by the contract (2) was breached, with (3) damages proximately caused by the breach." *Work-Force Sols., Inc v. Antoine Creek Farms, LLC*, 35049-5-III, 2018 WL 1603056, at *3 (Wash. Ct. App. Apr. 3, 2018). Common issues predominate on these elements. Whether Liberty Mutual is allowed under Washington law to apply a flat, unitemized, and unexplained condition adjustment to the values of comparable dealer vehicles is a question common to the class. "To achieve comparability, deductions or additions for options, mileage or condition may be made if they are itemized and appropriate in dollar amount." WAC 284-30-320(3). Similarly, the regulations state that Liberty Mutual must "[b]ase all offers on itemized and verifiable dollar amounts." WAC 284-30-391(4). "Any additions or






1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

deductions from the actual cash value must be explained to the claimant and must be itemized showing specific dollar amounts." WAC 284-30-391(5)(d).

Plaintiff will present classwide proof that wherever a condition adjustment was applied to a comparable vehicle, Liberty Mutual breached the contract. Rather than itemizing the condition adjustments it made to comparable vehicles—listing out each component and the amount of the adjustment, as it did with the loss vehicle—it simply subtracted a flat amount from each comp, lowering in turn the actual cash value of the loss vehicle. The deduction is not itemized nor is it verifiable or appropriate. These adjustments are, as a rule, applied to all dealer vehicles in CCC valuation reports used to value total loss claims.

CCC and Liberty both admit the adjustments are not itemized, and this Court has already held that it is not based on the format of the valuation report.[98] *Lundquist*, 2018 WL 3344791, at *5. Classwide liability can be found on that basis alone.

[redacted]

---

[98] Kohl Dep. 174:12-18; *Lundquist*, 2018 WL 3344791, at *5; LUND_000051 at p. 9, DeStefano Ex. 3; FNIC0003419 at 1, DeStefano Ex. 10.

[99] Hausman-Cohen Decl. ¶ 22.

[100] CCC's 1st Supp. Resp. to Pls. C [redacted] t p. 32 (ROG 16), DeStefano Ex. 15; CCC_LUND00139267 at p. 19 ([redacted]), DeStefano Ex. 16; CCC_LUND00139818 at p. 23, DeStef [redacted]. 3, DeStefano Ex. 18.

[101] *Id.*

HAGENS BERMAN
1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

[redacted]

The Court can decide as to the entire class whether Liberty and CCC's approach complies with Washington law or not. Each insurance contract incorporates Washington law, including the regulations that govern the valuation of total loss claims. Thus, the breach of Washington law becomes a breach of the contract that may be resolved on a classwide basis.

[redacted]

Variations in the specific amounts of damages do not undermine predominance. *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1026 (9th Cir. 2011). Plaintiffs can determine the amount each individual insured was affected and calculate that aggregate total precisely.[104] Liberty Mutual admits that once CCC applies the condition adjustment to the valuation, Liberty Mutual has no means to alter it. Liberty Mutual's adjusters are not trained in determining the condition of comparable vehicles and have no means or basis to second-guess CCC's adjustment to the comps. Whatever Liberty Mutual and a customer might clarify or correct in a given valuation report, the condition adjustment remains. Plaintiffs have drawn a sample of 200 of Liberty Mutual's total loss claim files and asked Liberty Mutual to produce all reports where the amount paid on the claim departed from the amount shown on the CCC valuation report. Of these files, only four departed from the

[102] Hausman-Cohen Decl. ¶¶ 17, 20.

[103] *Id.*

[104] Kaufman Decl. Ex. A at 5-14.

HAGENS BERMAN
1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

application of a condition adjustment, and then only because they referred to an outside appraisal or NADA value. There was never a departure from the number based on any correction or removal of the condition adjustment.[105] Plaintiffs can therefore present common proof that the adjustment violated Washington law and industry practices and resulted in damages to each class member.

**b. Breach of the implied covenant of good faith and fair dealing.**

The only substantive difference between the breach of contract and bad faith claims relates to reasonableness of Liberty Mutual's performance under the contract. *Microsoft Corp. v. Motorola, Inc.*, 963 F. Supp. 2d 1176, 1184 (W.D. Wash. 2013). Liberty Mutual's conduct in establishing its practices in Washington contrary to WAC 284-30-391 and 48.30.010, and its reasonableness in doing so is a common issue, not one that differs from insured to insured. Plaintiffs will present classwide evidence in the form of expert testimony that Liberty Mutual's settlement practice constituted a textbook example of bad faith because it set up a systemic bias against the interests of the insured, resulting in undervaluations and underpayments of claims.[106] It failed to meet standards relating to itemizing adjustments, applying appropriate adjustments, reasonably investigating claims, and establishing reasonable standards for the investigation of claims.[107] Plaintiffs have classwide proof that the Defendants' valuation process is misleading: The standard format of the valuation report is intended to mislead consumers about their claims.[108] Defendants employed standard procedures designed to deflect attention away from the condition adjustment and obscure the process, and to prevent consumers from

[105] DeStefano Decl. ¶ 28.

[106] Feb. 21, 2020 Declaration of William Berglund (Berglund Decl.) attaching Expert Report at Ex. A, at 18-22.

[107] Berglund Decl. Ex. A at 18-22.

[108] Schwickerath Decl. Ex. A at 16-18.



HAGENS BERMAN
1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

questioning it.[109] The common questions relating to Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing therefore also predominate.

**c. Violations of the Washington Consumer Protection Act**

Plaintiffs' classwide proof of consumer deception rests on the same classwide proof of their claims of breach of contract plus additional evidence that the Defendants' acts were deceptive, violated Washington insurance standards, and impacted the public. The elements of a claim under the Consumer Protection Act are as follows: "(1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) that impacts the public interest, (4) injury to plaintiff's business or property, and (5) which injury is causally related to unfair or deceptive act." *Shields v. Morgan Fin., Inc.*, 125 P.3d 164, 167 (Wash. Ct. App. 2005). Because Liberty Mutual's practices are misleading, deceptive, and violate claims handling regulations, they also violate the Consumer Protection Act. *Truck Ins. Exch. v. Vanport Homes, Inc.*, 58 P.3d 276, 283-84 (Wash. 2002) ("Violations of WAC 284-30-330 are per se violations of Washington's Consumer Protection Act."). Common issues therefore predominate on Plaintiffs' claim of consumer fraud.

**d. Civil conspiracy**

Plaintiffs' proof of conspiracy rests on the same classwide proof as their claims of breach of contract and consumer deception, plus additional evidence that the Defendants entered into an agreement to breach contracts, violate Washington law, and underpay total loss claims. Evidence of the Defendants' agreement and concerted actions is necessarily common to the class. Liberty Mutual has contracted with CCC to perform valuation services for decades and as recently as 2016 conducted diligence review of CCC's methods and outputs. CCC represents that its valuations satisfy state law and provides ongoing training and feedback to Liberty Mutual adjusters, dismissing and deflecting concerns raised that the condition

[109] Schwickerath Decl. Ex. A at 16-18.



HAGENS BERMAN
1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

adjustments do not comply with Washington law. Liberty Mutual and CCC have continuously valued vehicles under this unlawful arrangement during the class period. Classwide issues regarding conspiracy therefore predominate over any individualized questions.

**2. A class action is the superior method of adjudication.**

"The purpose of the superiority requirement is to assure that the class action is the most efficient and effective means of resolving the controversy." *Wolin,* 617 F.3d at 1175 (punctuation and citation omitted). "Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification." *Id.*

[redacted] The damages suffered by each class member range from a few hundred to thousands of dollars, too low to incentivize many individual class members to pursue litigation on an individual basis. Forcing class members to bring individualized claims, concerning the same issues, in the same forum, under the same consumer protection laws and insurance regulations would be an inferior form of adjudication. And no other prospective class members have filed other related actions.

The Court must also consider the manageability of a class action. *See* Fed. R. Civ. P. 23(b)(3). Manageability concerns encompass practical concerns such as the potential difficulties in notifying class members of the suit, calculation of individual damages, and distribution of damages." *Six (6) Mexican Workers v. Ariz. Citrus Growers,* 904 F.2d 1301, 1304 (9th Cir. 1990). Plaintiffs anticipate no manageability concerns. Given that the issues will be resolved by common proof, this case can be tried efficiently as a class action. Further, Liberty Mutual has already compiled a list of relevant claims numbers with corresponding names and contact information. No manageability concerns will make thousands of individualized actions a better alternative. *Bowerman v. Field Asset Servs., Inc.*, 242 F. Supp. 3d 910, 933 (N.D.

HAGENS BERMAN
1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

Cal. 2017) ("Manageability concerns must be weighed against the alternatives and will rarely, if ever, be sufficient to prevent certification of a class.").

**E. Class certification is appropriate under Rules 23(b)(2) and (c)(4).**

Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(2) and (c)(4) because the Defendants' actions are generally applicable to the class as a whole, and Plaintiffs seeks, *inter alia*, equitable remedies with respect to the class as a whole.

Each of these claims presents the same issues presented by the breach of contract claim. For the reasons discussed above, common questions predominate on those issues. Accordingly, common issues of law and fact predominate across all claims. The legal inquiry across the proposed classes is the same. And the legal elements are susceptible to classwide factual proof. The predominant questions in this case are whether Liberty Mutual's admitted policies comply with Liberty Mutual's contractual and statutory obligation to pay the correct actual cash value, whether Liberty Mutual makes itemized and appropriate condition adjustments, and whether Liberty Mutual's claims handling practices meet Washington standards. Those are common questions, susceptible to classwide resolution, and thus the Court should certify a class for injunctive and declaratory relief under Rule 23(b)(6) and/or an issue-specific class under Rule 23(c)(4) as to each of the common issues listed above.

## IV. CONCLUSION

Plaintiffs respectfully request that the Court grant their Motion for Class Certification and enter an order certifying the proposed class under Rules 23(a), (b)(2), (c)(3), and/or (c)(4), appoint Plaintiffs as class representatives for the respective class, and appoint Plaintiffs' counsel as class counsel.



HAGENS BERMAN
1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

Dated: February 21, 2020

HAGENS BERMAN SOBOL SHAPIRO LLP

By *s/ Steve W. Berman*
Steve W. Berman

Steve W. Berman (WSBA #12536)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com

Robert B. Carey (*pro hac vice*)
John M. DeStefano (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
11 West Jefferson Street, Suite 1000
Phoenix, AZ 85003
Telephone: (602) 224-2628
rob@hbsslaw.com
johnd@hbsslaw.com

Marc A. Goldich (*pro hac vice*)
AXLER GOLDICH LLC
1520 Locust Street, Suite 301
Philadelphia, PA 19102
Telephone: (267) 534-7400
mgoldich@axgolaw.com

David Woloshin (*pro hac vice*)
Dina S. Ronsayro (*pro hac vice*)
ASTOR WEISS KAPLAN & MANDEL LLP
200 South Broad Street, Suite 600
Philadelphia, PA 19102
Telephone: (215) 790-0100
dwoloshin@astorweiss.com
dronsayro@astorweiss.com



