HON. ROBERT J. BRYAN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CAMERON LUNDQUIST, an individual, and LEEANA LARA, an individual, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

FIRST NATIONAL INSURANCE COMPANY OF AMERICA, a New Hampshire Corporation, and LM GENERAL INSURANCE COMPANY, an Illinois Corporation, CCC INFORMATION SERVICES INCORPORATED, a Delaware Corporation,

Defendants.

No. 18-cv-05301-RBJ

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO COMPEL PRODUCTION OF RULE 26 EXPERT DISCLOSURES**

NOTE ON MOTION CALENDAR: April 24, 2020

Trial Date: November 16, 2020





## I. INTRODUCTION

Defendants' Motion to Compel should be denied for three reasons. First, Defendants admit—as they must—that Plaintiffs' experts have already produced the tables containing the data considered or relied upon by Plaintiffs' experts. These data tables identify and contain the condition adjustment information for the thousands of loss vehicles that belong to class members as well as tens of thousands of comparable vehicles used to value the loss vehicles and the condition adjustments applied to those vehicles. In other words, Plaintiffs' experts considered classwide data showing the amounts of the illicit condition adjustments to comparable vehicles and the amounts of the condition adjustments made to loss vehicles. Defendants call these tables "incomplete"[1] but never actually acknowledge or explain to the Court what the disclosed data tables contain, namely, data that shows on a classwide basis that CCC and Liberty Mutual conspire to undervalue and underpay total loss claims. This is the data that Plaintiffs' disclosed experts considered and relied upon, and the disclosure of this data satisfies Rule 26.1.

Second, there is no merit to Defendants' request for materials relating to the supposed "manipulation" of data. There was no "manipulation" of data that was not disclosed; Plaintiffs hired consultant Larry Hausman-Cohen to copy Defendants' valuation data from Defendants' own graphical valuation reports into a format that can be stored electronically. To the extent that Larry Hausman-Cohen—a consultant who has not been identified as a testifying expert—re-produced Defendants' data in a format that allowed it to be viewed in formats or arrangements desired by Plaintiffs, that reproduction of data reflects Plaintiffs' separate work product and need not be produced. Indeed, any such disclosure would be pointless in view of the fact that the data originated with CCC and Liberty Mutual and is already in their possession. Plaintiffs' experts disclosed to

[1] Mot. at 9 & n.28.



HAGENS BERMAN
1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

Defendants all data considered and relied upon (including simple averages and ranges of the data within it, equally accessible to Defendants) in rendering their opinions. Mr. Hausman-Cohen did not perform any "manipulations"; he reproduced the Defendants' own data in a different format and presented simple ranges and averages that Defendants can just as easily determine from their own data. Defendants are not entitled to Plaintiffs' manual effort to put the same data into a different format, as it is work product used to facilitate the mere copying of the data. This situation is no different than if Defendants provided Plaintiffs a printed memorandum and Plaintiffs retyped it into a Word document to assist with future briefing—or if Defendants provided facts that Plaintiffs organized into other work product such as a timeline. Nor have Defendants—who again, are in possession of the valuation reports and internal claims databases—made any showing that Plaintiffs' databases contain something other than Defendants' own data. Rule 26.1 does not require the production of tools used only to copy Defendants' own data into a new format. Such tools represent Plaintiffs' work product and do not make up any part of what Plaintiffs' experts considered in composing their reports.

Third, Plaintiffs have also met their burden to disclose a computation of damages pursuant to Fed. R. Civ. P. 26(a)(1)(A)(iii). Plaintiffs have disclosed a detailed account as to how classwide damages can be derived and the data tables Plaintiffs' experts relied on. The extraneous data Defendants seek was not used in Plaintiffs' computation of damages and is already in Defendants' possession.

## II. BACKGROUND

### A. Defendants work in concert to undervalue insurance claims.

When an insured suffers a total loss, insurance companies must value and pay the actual cash value of the vehicle—the fair market value of the loss vehicle just before the loss. WAC 284-30-320, -380, -391. As this Court has held, condition adjustments to comparable vehicles must be itemized, appropriate, and explained to






1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

the insured. WAC 284-30-320(3), -391; *Lundquist v. First Nat'l Ins. Co. of Am.*, No. 18-5301 RJB, 2018 WL 3344791, at *4 (W.D. Wash. July 9, 2018). Defendants Liberty Mutual and CCC violate this rule through a uniform and systematic process that applies unitemized and arbitrary "condition adjustments" to all comparable vehicles located on dealer lots.[2] The result is an undervaluation and underpayment of the insured's total loss claim by the amount of the condition adjustment.

CCC derives and calculates the amounts of the condition adjustments applied to all of the comparable vehicles at issue.[3] CCC creates valuation reports for Liberty Mutual and populates the valuation reports with the condition adjustments.[4] CCC maintains record copies of the valuation reports that it supplies Liberty Mutual and has produced them in this case.[5] And while CCC has failed to produce the raw underlying data used in the reports in response to discovery requests, CCC presents no proof (and has refused Plaintiffs' requests to confirm in discovery conferrals) that it does not maintain additional databases of the data CCC itself created.[6] CCC foisted the burden of copying the data out of the valuation reports onto Plaintiffs rather than do the work themselves. For this reason, Plaintiffs engaged consultant Larry Hausman-Cohen to copy the data from the valuation reports and place it into a table format.[7]

**B. Unitemized condition adjustments are applied to comparable vehicles on a systemic basis.**

"To achieve comparability, deductions or additions for options, mileage or condition may be made if they are itemized and appropriate in dollar amount." WAC 284-30-320(3). Similarly, the regulations require that Liberty Mutual "[b]ase

[2] Dkt. # 90 ¶¶ 37-38.

[3] *Id.*; Dkt. # 145-22 (Ins. Def. Comb. Resp. to Pls.' Second Set of Discovery) at p. 10 (ROG 19); Dkt. # 147-1 (Deposition of Scott Khol) 139:25-140:9.

[4] *Id.*

[5] Declaration of John. M. DeStefano dated April 20, 2020 (DeStefano Decl. 4/20/2020) ¶ 3.

[6] Dkt. # 145-22 (Ins. Def. Comb. Resp. to Pls.' Second Set of Discovery) at p. 6 (RFP 19); DeStefano Decl. 4/20/2020 ¶ 4.

[7] Dkt. # 147-19 (Hausman-Cohen Decl.) ¶ 2.






1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

all offers on itemized and verifiable dollar amounts." WAC 284-30-391(4). "Any additions or deductions from the actual cash value must be explained to the claimant and must be itemized showing specific dollar amounts." WAC 284-30-391(5)(d). Both Defendants have admitted the condition adjustments are not itemized and verifiable.[8] This Court has also held that based on a review of CCC's valuation report, the condition adjustments are not itemized and verifiable. *Lundquist*, 2018 WL 3344791, at *5. The condition adjustments cannot possibly be "appropriate dollar amount" if they are not individually calculated. WAC 284-30-320(3).

Plaintiffs' classwide proof that the condition adjustments reduce claim payments is based upon the condition adjustments themselves.[9] Plaintiffs rely on the data that CCC creates and maintains for the valuation reports it provides to Liberty Mutual.[10] In other words, the condition adjustment flows from the report that CCC creates to Liberty Mutual's payment calculation, as shown by the detailed evidence submitted with Plaintiffs' sealed motion for class certification.[11] Adjusters rely on CCC for their specific valuation calculations and do not depart from condition adjustments applied to comparable vehicles.[12]

Plaintiffs' survey of 200 claim files provides a method of classwide proof that the condition adjustment reduces claim payments almost all the time.[13] For 98% of the sample claims files, the payment on the claim was reduced by the exact amount of the condition adjustment to comparable vehicles.[14] While a handful of claims

---

[8] Dkt. # 147-1 (Kohl Dep.) 174:12-18; *Lundquist*, 2018 WL 3344791, at *5; Dkt. # 145-3 (LUND_000051) at p. 9; Dkt. # 147-7 (FNIC0003419) at p. 1.

[9] Dkt. # 146 (Pls.' Class Cert. Mot. (under seal)) at p. 19.

[10] *Id.* at pp. 19-20.

[11] Dkt. # 145-2 (Ramm Dep.) at 83:1-84:12; Dkt. # 147-1 (Kohl Dep.) 139:25-140:9. Dkt. # 146 (Pls.' Class Cert. Mot.) at pp. 5-8.

[12] Dkt. # 145-22 (Ins. Def. Comb. Resp. to Pls.' Second Set of Combined Discovery) at p. 10 (ROG 19); Dkt. # 147-1 (Kohl Dep.) 198:7-9; Dkt. # 147-21 (Schwickerath Decl.) at 16-18; Dkt. # 146 (Pls.' Class Cert. Mot.) at pp. 5-8.

[13] Dkt. # 146 (Pls.' Class Cert. Mot.) at p. 9; Dkt # 147 (DeStefano Class Cert, Decl.) ¶ 28; Dkt. # 147-26.

[14] Dkt. # 147. (DeStefano Class Cert. Decl.) ¶ 28.



HAGENS BERMAN
1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

went to appraisal, there was never a departure from the number based on any correction or removal of the condition adjustment itself.[15]

By using the condition adjustment data that Plaintiffs have copied from the CCC reports and disclosed in accordance with Rule 26.1, Plaintiffs can present common proof that the adjustment violated Washington law and industry practices, resulting in damages to each class member.[16] The Class includes only those insureds whose total loss claims involved the use of CCC reports containing illicit condition adjustments described above.[17] From tables containing the relevant condition adjustments from the CCC reports, Plaintiffs' experts can show that the adjustments reduced claims payments for the class at large and calculate damages.[18]

**C. Plaintiffs produce expert reports in compliance with the Rules.**

Rule 26(a)(2)(B) requires disclosure of "the facts or data considered by the witness in forming" their expert opinions. With regard to Plaintiffs' experts David Schwickerath, William Berglund, and Lance Kaufman, Plaintiffs have disclosed:

- The bates number for each document containing data relied upon by the expert in creating his report;[19]
- Data tables containing the underlying data considered by the expert, such as the table containing the condition adjustments to comparable vehicles for the class;[20]
- A declaration of Larry Hausman-Cohen considered by each expert, which summarizes the data contained in the data tables disclosed; and

[15] *Id.*

[16] Dkt. # 146 (Pls.' Class Cert. Mot.) at p. 21.

[17] Dkt. # 90 (SAC) ¶ 56.

[18] *Id.*

[19] Dkt. # 147-19 (Hausman-Cohen Decl.) ¶ 6.

[20] *Id.* ¶¶ 7-11.



HAGENS BERMAN
1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

- The application used to convert documents from .pdf format to rich text format and a description of the process used to copy the data into a database.[21]

## III. ARGUMENT

### A. Plaintiffs have satisfied their expert disclosure requirements.

Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure requires disclosure of "the facts or data considered by the witness in forming" their expert opinions. Plaintiffs have satisfied this burden by disclosing the data tables considered by Plaintiffs' experts—namely, the tables containing the condition adjustments associated with all 12,000-plus loss vehicles associated with the class. This disclosure is "sufficiently complete, detailed and in compliance with the Rules so that surprise is eliminated, unnecessary depositions ... avoided, and costs are reduced" as required by Rule 26.1. *Elgas v. Colorado Belle Corp*., 179 F.R.D. 296, 299 (D. Nev. 1993). Defendants claim that they are entitled to all data copied from the valuation reports—including information Plaintiffs' experts did not consider in rendering their opinions—but this is not what the Rules require.[22]

The information relied upon is already in Defendants' possession.[23] The database was derived entirely from documents produced by CCC, which are identified by bates number in Mr. Hausman-Cohen's declaration.[24] Plaintiffs used an automated process to render the data provided by CCC into another format.[25] Nothing in Rule 26.1 entitles Defendants to data other than what the experts considered—particularly where CCC itself created the data at issue and both Defendants possess it already in their databases and valuation reports.[26]

---

[21] *Id*

[22] Mot. at 2.

[23] DeStefano Decl. 4/20/2020 ¶ 5.

[24] Dkt. # 147-19 (Hausman-Cohen Decl.) ¶ 6.

[25] *Id.* ¶¶ 6-7.

[26] Plaintiffs have repeatedly informed Defendants that they are in possession of the data and documents from which Hausman-Cohen's Declaration was derived, but Defendants persist in seeking Plaintiffs' complete database. DeStefano Decl.4/20/2020 ¶ 5, Ex. A (3/18/2020 DeStefano email).



HAGENS BERMAN
1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

The cases Defendants rely on are inapposite. For example, *Hughes Aircraft Co. v Century Indem. Co.* involved computer simulations that were used to determine whether large volumes of a chemical would penetrate the soil and whether such penetration would enter the groundwater in a matter of months or a matter of years. 1998 WL 166534, at *7 (9th Cir. 1998). The expert in *Hughes* ran 149 "draft" experiments and deleted each of them, only producing his final computer model on behalf of the appellant. *Id.* at *8. The Ninth Circuit found the expert's destruction of evidence willful, intentional, and done in bad faith. *Id.* The facts of *Hughes* are not at all akin to that of the present case. Here, Defendants have access to each of the data points relied upon by Plaintiffs' expert and the reports from which those points were derived.[27]

Likewise, the data points in *Derrickson v. Circuit City Stores Inc.* were "subjected to various selection, aggregations and weighing processes." 1999 WL 1456538, at *7 (D. Md. 1999). The simple rendering of data from one format to another does not pose the prejudice of "information exclusively within the [expert's] cognizance" present in *Derrickson*. *Id.* at *8. Here, there was no manipulation of the data being disclosed and Defendants can verify the accuracy of the data by reviewing the valuation reports and associated report data in their possession.

**B. Defendants have not shown any basis for disclosure of materials relating to the copying of CCC's data into a new format.**

A motion to compel discovery under Rule 26(a)(2)(B) must include a threshold showing that the requested information falls within the scope of discovery under Rule 26. *Sanhueza v. Lincoln Technical Institute, Inc.*, 2014 WL 6485797, at *2 (D. Nev. Nov. 18, 2014) (citing *Hofer v. Mack Trucks, Inc.,* 981 F.2d 377, 380 (8th Cir. 1992)). As demonstrated above, Defendants are already in possession of all the facts and data relied on by Plaintiffs' experts in the creation of their reports.

---

[27] *See generally* Dkt. # 147-19 (Hausman-Cohen Decl.).



HAGENS BERMAN
1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

Nonetheless, Defendants now seek disclosure of the computer code used by Mr. Hausman-Cohen to copy data out of the CCC reports into an electronic format that allowed it to be viewed in formats or arrangements desired by Plaintiffs.[28] This information does not fall within the scope of Rule 26(a)(2)(B) because it is not facts or data considered or relied upon by experts, and Defendants are not entitled to its disclosure.

Mr. Hausman-Cohen was not retained or identified as an expert in this case. Rather, he is a consultant Plaintiffs hired to assist them with reproducing data from over 12,000 CCC valuation reports. Mr. Hausman-Cohen's task was not to "manipulate" the data (as Defendants would have it) but merely to transfer it from the valuation report format into a format desired by Plaintiffs. Mr. Hausman-Cohen explained his copying methodology in a declaration that was disclosed with the expert reports.[29]

Defendants' argument that they are unable to analyze Plaintiffs' expert conclusions without disclosure of data not considered by the experts is not supported by the facts or law. Defendants can easily perform the same .pdf to text conversions to "test" the steps that led to the creation of the database. Instead, Defendants seek to profit from Plaintiffs' labors by demanding the production of Plaintiffs' work product. There is no basis in Rule 26.1 to require disclosure of data going beyond what the experts actually considered or relied upon, which was already disclosed.

Defendants have not shown that the organized rendering of their data into another format falls within the scope of Rule 26(a)(2)(B). Defendants have not shown any need for disclosure of Mr. Hausman-Cohen's work product regarding the reproduction of the data, particularly where the data itself was created by

---

[28] Mot. at *fn* 28. Defendants seek fields of extraneous data contained in CCC's own valuation reports. These tables were necessarily created in the conversion of the valuation reports into a single database, but were not considered or relied upon by Hausman-Cohen.

[29] Dkt. # 147-19 (Hausman-Cohen Decl.) ¶¶ 6-19.



HAGENS BERMAN
1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

Defendants and is in the possession of Defendants. Nor have Defendants made any showing that the disclosed databases fail to accurately reflect the data contained in the CCC valuation reports. In any event, they would not need Mr. Hausman-Cohen's work product to do so as they could simply compare the data tables to the valuation data already in their possession. Plaintiffs' experts did not consider Mr. Hausman-Cohen's data reproduction source code in rendering their opinions, so no further disclosure is required.

### C. Plaintiffs have met their burden of disclosure prescribed by Rule 26(a)(1)(A)(iii).

Pursuant to Fed. R. Civ. P. Rule 26(a)(1)(A)(iii), Plaintiffs are required a computation of each category of damages and the evidentiary material on which each computation is based. Plaintiffs have met this burden by disclosing the reproduced data Plaintiffs' experts relied on in presenting a classwide method of proving damages in support of the motion for class certification.[30] Plaintiffs have also provided, by way of the expert report of Lance Kaufman, the methodology by which Plaintiffs' experts propose classwide damages are calculated.[31] The additional information and data Defendants seek is Plaintiffs' protected work product. Fed. R. Civ. P. 26(b)(3). Plaintiffs are not obligated to disclose protected work product under Rule 26(a)(1)(A), there is no basis to compel Mr. Hausman-Cohen's separate data or reproduction source code pursuant to this Rule.

## IV. CONCLUSION

For all of the foregoing reasons, the Court should deny Defendants' Motion to Compel Production of Rule 26 Expert Disclosures.

[30] DeStefano Decl. 4/20/2020 ¶ 5, Ex. A.

[31] Dkt. # 147-20 (Kaufman Decl.) at pp. 15-16.



HAGENS BERMAN
1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

Dated: April 20, 2020

HAGENS BERMAN SOBOL SHAPIRO LLP

By *s/ Steve W. Berman*
Steve W. Berman

Steve W. Berman (WSBA #12536)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com

Robert B. Carey (*pro hac vice*)
John M. DeStefano (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
11 West Jefferson Street, Suite 1000
Phoenix, AZ 85003
Telephone: (602) 224-2628
rob@hbsslaw.com
johnd@hbsslaw.com

Marc A. Goldich (*pro hac vice*)
AXLER GOLDICH LLC
1520 Locust Street, Suite 301
Philadelphia, PA 19102
Telephone: (267) 534-7400
mgoldich@axgolaw.com

David Woloshin (*pro hac vice*)
Dina S. Ronsayro (*pro hac vice*)
ASTOR WEISS KAPLAN & MANDEL LLP
200 South Broad Street, Suite 600
Philadelphia, PA 19102
Telephone: (215) 790-0100
dwoloshin@astorweiss.com
dronsayro@astorweiss.com